### LEIGH CLARK ET AL. v. MRS. J. L. BELL ET AL.

#### Decided June 7, 1905.

**1.—Common Source—Priority in Time of Deeds—Fraud Against Creditors.**

Where the wife, as plaintiff, claimed under a deed made to her by the husband, and the defendant under a sheriff's deed made by virtue of an execution against the husband, both parties claimed under a common source, and the wife's deed, being the older, was superior in law, unless made by the husband in fraud of his creditors.

**2.—Deed in Fraud of Creditors—Notice.**

A deed by an insolvent debtor, made in payment of a debt, and conveying property which exceeds in value many times the amount of the debt, is fraudulent as to creditors, irrespective of whether or not the grantee knows of such fraud.

**3.—Same—Voluntary Conveyance—Notice.**

A voluntary conveyance is invalid against creditors without reference to knowledge, or want of it, on the part of the grantee of the grantor's indebtedness.

**4.—Same—Execution Sale—Inadequacy of Price.**

Where property, which has been conveyed by a debtor to place it beyond the reach of his creditors, is sold under execution against him, such sale will not be avoided or set aside at the instance of the fraudulent grantee because of inadequacy of the price the property brought at the execution sale.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Falvey & Davis, Leigh Clark* and *W. M. Peticolas,* for appellants.—
1. From the deed itself, and the undisputed evidence, the conveyance from Bell to his wife was as a matter of law conclusively presumed to be, and was, fraudulent and void as against the creditors of J. L. Bell, and the third paragraph of the court's charge, and the instructions thereinafter in the general charge contained, were erroneous. Briscoe v. Bronaugh, 1 Texas, 329, 335, 336; Brasher v. Jamison, 75 Texas, 140; Torry v. Cameron, 73 Texas, 583; Speer, Law of Married Women, sec. 93, p. 88.

2. If the title of Mrs. Bell was fraudulent and void, then she did not have a regular chain of title under the common source, and the court erred in assuming that she had shown a regular chain of title back to the common source. Garner v. Lasker, 71 Texas, 433; Tapp v. Corey, 64 Texas, 595; Briscoe v. Bronaugh, 1 Texas, 329; Keys v. Mason, 44 Texas, 143; Hill v. Allison, 51 Texas, 390.

3. There being no conflict in the evidence, and there being but one conclusion from the evidence, and that conclusion being that J. L. Bell,

in executing the deed to his wife, did so with the fraudulent purpose and intent of delaying, hindering and defrauding his creditors, and that she knew of such purpose, the court should have so told the jury. Brasher v. Jamison, 75 Texas, 140; Oppenheimer v. Haeff, 66 Texas, 409; Greenleve v. Blum, 59 Texas, 124, 68 Texas, 409; McKinnon v. Reliance Lbr. Co., 63 Texas, 30; Kraus v. Haas, 6 Texas Civ. App., 671; Freyhe v. Tiernan, 76 Texas, 291; Simon v. Ash, 1 Texas Civ. App., 210.

4. If Mrs. Bell did not, in fact, know of the fraudulent purpose and intent of her husband in making said deed to her, she was, from the facts known to her, chargeable with such knowledge. Cox v. Miller, 54 Texas, 27; Watts v. Dubois, 66 S. W. Rep., 698; Mosely v. Garner, 10 Texas, 397; Mills v. Heweth, 19 Texas, 259; Humphries v. Freeman, 22 Texas, 52; Blum v. Simpson, 71 Texas, 630.; Taylor v. Townsend, 461 Texas, 182.

*Patterson, Buckler & Woodson,* for appellees.—Upon the phase of the case that Mrs. J. L. Bell was the holder of the superior title by purchase from her husband, the trial court gave the jury clearly and fully the law as laid down in Nicholas-Stewart v. Crosby, 87 Texas, 443, which holds that, where the price paid by a purchaser at an execution sale was so grossly inadequate as to shock the conscience, the purchaser could not be considered either a bona fide purchaser or a purchaser for value in a contest with a claimant of a superior title. In this case just cited our Supreme Court says: "We have been cited to no case where a court of equity has postponed a superior title in order to protect a purchaser for such a consideration." See, in this connection, also, State Nat. Bank v. Waxahachie Nat. Bank, 30 S. W. Rep., 366, 367; Carpenter v. Anderson, 77 S. W. Rep., 293, 294; Huff v. Maroney, 56 S. W. Rep., 755.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Mrs. J. L. Bell, joined by her husband, appellees, against Leigh Clark personally, and as trustee for William D. Garland, in the ordinary form of trespass to try title to recover possession and title to certain lots or parcels of land situated in the city of El Paso, Texas.

The defendants answered by a plea of not guilty, and specially, that the deed under which the plaintiff, Mrs. J. L. Bell, claims the property in controversy, was made by her husband, J. L. Bell, for the fraudulent purposes of hindering and delaying his creditors, and especially W. D. Garland, who was a judgment creditor of Bell at the time the deed was executed, and the defendant Clark, who owned an interest in such judgment. They asked that the alleged fraudulent deed be set aside, and that they recover possession of and be quieted in their title to said property, which they had acquired by purchase at execution sale under said judgment.

Pending the suit Garland died intestate, leaving his wife, Sarah E. Garland, his sole heir. She subsequently died intestate, leaving as her heir Caled E. Dorr, who was made a party defendant. By supplemental petition the plaintiffs plead that, at the execution sale, certain of the property sued for by plaintiffs, and sought to be recovered from them

by defendants in their cross-action, was bought in by defendant Leigh Clark, for the plaintiff in execution, at a grossly inadequate price, to wit, the sum of $50, which was all that was paid for the property at such sale, and they tendered to defendants such amount. Though plaintiffs ask no relief by this supplemental petition, presumably, which is indicated by their position on trial and the action taken by the trial court, they sought to avoid the deed to defendants made under such execution sale upon the grounds alleged in such petition.

The land bought by defendants at this execution sale was, as the court instructed the jury, really the only land the title to which was in controversy in this suit. Certain parts of the land sued for had, prior to the execution sale, been levied upon and sold by virtue of an order of sale issued on the same judgment, and bought in by defendants, and their title by virtue of such purchase perfected as against plaintiffs by a decree of the court. As to most of this part of the land plaintiffs abandoned their suit, and as to that part thereof, which was very small, which was owned by J. L. Bell, and bought under said order of sale by defendants, the court instructed the jury to find for defendants.

Certain other parcels of land described in plaintiffs' petition were never purchased by defendants, either under the order of sale or the execution, and as to these parts the court peremptorily instructed a verdict for plaintiffs. After these peremptory instructions the case, insofar as it involved the land sold at execution sale, was tried before a jury, and the trial resulted in a judgment in favor of plaintiffs.

As we have concluded to reverse the judgment because it is manifestly against the evidence, and on account of errors in the court's charge, we will state substantially the evidence which is uncontradicted, pertinent to the issues involved. On the 19th day of September, 1894, J. L. Bell was indebted to William D. Garland on a promissory note executed by the former to the latter on the 26th day of August, 1892, in the sum of $789.50, principal and interest. The debt was of the community of Bell and wife. The debt being due, Garland, who was represented by Leigh Clark as his attorney, sued thereon, and on the 3d day of October, 1894, recovered judgment in the District Court of El Paso County against J. L. Bell in such suit in the sum of $793, with interest from that date at the rate of six percent per annum. Clark, by assignment, was the owner of a one-half interest in such judgment. All the property described in plaintiffs' petition and involved in this suit was acquired by J. L. Bell before the rendition of said judgment from W. W. Williams, who conveyed the property by three deeds; by one of the deeds some of the lots were conveyed to J. L. Bell, and by the other two deeds all the other part of the property was conveyed to Mrs. J. L. Bell. All three deeds were in such form as to prima facie vest the title to the property in the community. The evidence shows that Bell paid for the property by certain stock which he held in a soap manufacturing company in the Republic of Mexico. This stock also appears to have been of the community property of Bell and wife.

On November 1, 1894, after the judgment referred to had been recovered by Garland, J. L. Bell executed a deed to his wife, Mrs. J. L. Bell, conveying to her the lots in controversy. This deed conveyed all

the property that Bell owned, not encumbered by liens, subject to execution, leaving Bell without any property to satisfy his debts. It did not, however, include the property which was sold by virtue of the judgment against Bell under the order of sale, and bought in at such sale by defendants. The value of the property at the time of the conveyance was $3,925.

As to the consideration, the deed contains the following recital: "Know all men by these presents: That I, James L. Bell, of the city of Juarez, Mexico, for and in consideration of the sum of one and fifty one-hundredths dollars ($1.50), to me in hand paid, and other valuable considerations paid by Mrs. J. L. Bell, and other good considerations, the receipt of which is hereby acknowledged, and in recognition of the separate ownership of property hereinafter described by the said Mrs. J. L. Bell, who, in fact, advanced the consideration for the purchase of said property, have granted, sold and conveyed," etc. There is no testimony whatever in the record tending to show that Mrs. Bell advanced the consideration for the purchase of said property, as is stated in the deed. Mrs. Bell testified by deposition: "All the property we own in El Paso was deeded to us by W. W. Williams. I do not know how the purchase price was paid, nor by whom, nor where the money came from with which it was paid. I did not pay it. The consideration was certain shares of soap stock in a soap manufacturing company at Samalayuca, Mexico. . . . I do not know the corporate name of the company which issued the stock referred to, nor can I answer as to the description of the stock. I do not know the number of the shares nor the value of them. At the time of my marriage to Mr. Bell I was not the owner of any real or personal property or money. The only person or estate from whom I ever inherited any money or property was from the estate of my mother's father, and it came to me after the death of my mother. The first amount received from the estate was $300, and that came to me in 1887. I loaned that to Mr. Bell. From that time I received other small amounts, but I do not recollect the amounts or the dates when they were received, nor do I know what the aggregate amount was. These were expended by me in household expenses, with the understanding that if Mr. Bell was ever able to do so he would repay them to me with interest. I do not know whether the $300 or the small sum referred to came to me by check, draft or money order. When I let Mr. Bell have the $300 there was no written agreement, and I don't know how the money was invested, or what became of it. Those of the lots which I owned were conveyed to me by Mr. Bell as my separate property in consideration of the money which he owed me as aforesaid."

After the order of sale, and sale thereunder, an execution was duly and regularly issued out of the District Court of El Paso County on the judgment above described, in favor of Garland against J. L. Bell, and duly levied by the sheriff on all the property conveyed by Bell to his wife by the deed above described, except that previously sold under the order of sale, as the property of J. L. Bell, and said property, after being duly advertised for sale, was regularly sold by said sheriff and bid in at the sale by Leigh Clark for himself, and as trustee for William D. Garland, and a deed executed by the sheriff conveying said

property to him for himself, and as trustee for Garland, by virtue of such sale. The property bought at such execution sale is the land the title to which is involved in this suit, and which was submitted to the jury by the charge of the court for its determination, and found by the verdict in favor of plaintiffs. At the execution sale Mrs. Bell, by her attorney, gave notice to all intending bidders that the property about to be sold was her separate property, and that the purchaser at the sale would obtain no title.

It is apparent from the pleadings and evidence that the only issue in this case is, was the deed from Bell to his wife in fraud of his creditors? If it were, then there can be no doubt of appellants' right to have the deed avoided and recover the property. It appears clear to us, from the undisputed evidence, that such deed was fraudulent as against Bell's creditors, and that, in view of the law governing a case of this character, no man of ordinary intelligence can come to any other conclusion. While we think, therefore, that the court should have peremptorily instructed a verdict for the defendants, yet we have no doubt that, if the jury had been instructed according to the law flowing from the facts in this case, it would have promptly returned a verdict in their favor. For, with the facts in mind, we can only account for the verdict in favor of appellees upon the hypothesis that the jury was misled by errors in the court's charge.

Mrs. J. L. Bell was the real plaintiff in this case, her husband being joined with her as plaintiff *pro forma.* As between her and defendants, her husband, and not W. W. Williams, was the common source of title. For both claimed directly under him, she by deed made by him in person, defendants by a subsequent deed made by Bell through the medium of the sheriff at execution sale. Therefore, inasmuch as the case was submitted to the jury, the court, instead of instructing that plaintiffs and defendants claimed title from a common source, and that, as plaintiffs showed a regular chain of title superior in time to that of defendants, from such source, to find for them the land in controversy, unless, etc., should have informed the jury that the plaintiff, Mrs. Bell, and the defendants, both claimed title from J. L. Bell as the common source—Mrs. Bell directly, by a deed from him, and defendants through him under execution sale, and then should have informed the jury that, as her deed was prior in time to that of defendants, it was superior in law, instructing them to find for her (Rilling v. Schultze, 95 Texas, 356), unless it found such deed was made by J. L. Bell for the purpose of hindering, delaying or defrauding his creditors. Then the court should have followed such portion of the charge with such instructions as would have enabled the jury to determine from the evidence whether such deed was made for such purpose, and if it were, to find for the defendants.

In its charge the court erroneously assumes the fact that the deed from J. L. Bell to his wife was in consideration of a prior indebtedness from him to her. No such consideration is recited in the deed, but, on the contrary, it upon its face negatives the idea that any such consideration was contemplated or induced Bell to execute the deed. And there was, in fact, no competent evidence tending to show that there was any such consideration. For it is apparent, from Mrs. Bell's testimony,

that her statement that the lots were conveyed to her by Mr. Bell as her separate property, in consideration of the money which he owed her, if it amounted to anything at all, was simply a conclusion, without any evidence or a single circumstance to support it.

It being shown by the testimony of Mrs. Bell herself that the lots in controversy were the community property of herself and husband, and it also appearing that it far exceeded in value the amount of money she claimed she had loaned her husband, and that by such conveyance he disposed of all his available property subject to execution, and was thereby left insolvent, even had it been shown that the consideration in the deed to her was intended as payment for what her husband owed her, whether she actually knew of the fraudulent intent of her husband in making the conveyance, under such facts and circumstances the law, in cases of this character, imputes fraud on the part of the vendor, and charges the vendee with knowledge of it. For one can not convey all of his property in payment of a debt when it exceeds in value over twelve times the amount of the indebtedness without such conveyance being in fraud of his creditors and without the grantee being necessarily charged with the knowledge of such fraud. But, from the undisputed facts, the conveyance to her by her husband appears to have been purely voluntary. And it is well settled that a voluntary conveyance is invalid against creditors, without reference to knowledge or want of it on the part of the grantee of the indebtedness of the grantor. (Bank v. Foster, 74 Texas, 515.)

It therefore being clear under the law, from the undisputed evidence, that the conveyance by Bell to his wife was made for the purpose of hindering, delaying or defrauding his creditors, and that his wife was by the law, in view of the undisputed facts, charged with knowledge of such fraud, the court should have so informed the jury, instead of leaving it to determine the existence and knowledge of such fraudulent intention. But the charge of the court as given, permitting the jury to find for defendants if they believed such fraudulent intent on the part of J. L. Bell, and knowledge thereof on the part of his wife were proven, was qualified by the eighth paragraph, which instructed the jury "that a purchaser at execution sale may be a bona fide purchaser for value in a case where he has paid less than the real value of the property purchased, but that, where the plaintiff in execution, or his attorney at an execution sale, bids in property at a grossly inadequate price, he can not be considered either a bona fide purchaser or purchaser for value in a contest with the claimant of the prior title; and that, if the jury believed from the evidence the conveyance from J. L. Bell to his wife was made by him for the purpose of hindering, delaying or defrauding his creditors, and such purpose was known to Mrs. Bell at the time of the conveyance to her, if such conveyance was made for a valuable consideration, that is, in satisfaction of a genuine debt owing by J. L. Bell to Mrs. Bell, and that if, thereafter, at said execution sale, defendant Leigh Clark bid in the property for himself and client for a nominal sum, and paid for said property a grossly inadequate price, and that such price so paid was so much less than the actual value of the property as to shock the conscience, to find a verdict for plaintiffs, notwithstanding the fraudulent

intent, if any, on the part of Bell in making the conveyance to Mrs. Bell."

Though under the undisputed testimony no other verdict than one for defendants ought to have been rendered, the jury, under the charge as thus qualified by its eighth paragraph, could not have returned any other verdict than the one it did. To have made short work of the matter, it would have been just as well, if not better, for the court to have peremptorily instructed a verdict for the plaintiffs.

The principle of law sought to be embodied in the paragraph of the charge referred to has no application whatever to a case of this character. It is only applicable in a case where the purchaser at execution sale (he being the execution creditor) or his attorney claims to be a bona fide purchaser, without notice of a prior conveyance of the property purchased of the execution debtor. But in this case neither Garland nor his attorney, Leigh Clark, was a purchaser without notice of the plaintiff's—Mrs. J. L. Bell's—deed to the property in controversy. For, aside from the record notice of her deed, actual notice was given them, as well as all others at the sale, that the property was the property of Mrs. Bell, and that the purchaser thereof at such sale would acquire no title. It would, in a case like this, where the defendant in execution has conveyed his property to his wife in fraud of his creditors, under such facts and circumstances as to charge her with knowledge of the fraud, be a travesty on justice to hold that the purchaser at the sale, if he be the plaintiff in execution or his attorney, would acquire no title as against the defendant in execution or his fraudulent vendee if the consideration bid at the sale, and paid by him, was grossly inadequate.

If the conveyance from Bell to his wife was fraudulent the land was, as between her and defendants, as though it never had been conveyed— that is, J. L. Bell's property—and subject to be sold as his in the same manner and in the same way, subject to the same principles as any other property of an execution debtor would be, and the purchaser at such sale would have the same rights, though the plaintiff in execution or his attorney, as though such conveyance by the execution debtor to his wife had never been made, subject only to the burden of showing in a contest with the wife for the property that the conveyance to her was fraudulent.

As is said by the Supreme Court in Pearson v. Flannagan (52 Texas, 280) : "The weight of authority, including that of this court, is, that mere inadequacy of price, of itself, is not sufficient to set aside a sheriff's sale otherwise valid. But that gross inadequacy of price in connection with slight additional facts showing fraud, irregularity or other circumstances calculated to prevent the property from bringing something like its reasonable value, might avoid the sale." (Citing Freeman on Executions, sec. 309; Allen v. Stephens, 18 Texas, 658; Chamblee v. Tarbox, 27 Texas, 139; see, also, Allen v. Pearson, 60 Texas, 604; Smith v. Perkins, 81 Texas, 153.) There were no facts or circumstances attending the execution sale at which the property in controversy was bought by defendants tending in the least to show fraud or irregularity, or any circumstance, except the notice given by plaintiff herself at the sale, that the property was hers, and the purchaser

would get no title, calculated to prevent the property from bringing something like its reasonable value. It is true that the fact that a conveyance by the execution creditor to another, though fraudulent, would tend to prevent the property from bringing a fair price. But we have yet to see a case where a sale at execution of property which had previously been conveyed by the execution debtor for the fraudulent purpose of placing it beyond the reach of his creditors avoided or set aside at the instance of a fraudulent vendee because of inadequacy of the price it brought at such sale. The law does not bother itself by trying to protect such fraudulent vendees. When it ascertains that a vendee is of that character, and has endeavored to aid his vendor in thwarting one of the very purposes for which it is instituted, it simply sets aside the conveyance in the interest of the creditor and leaves the vendee where he started—without the property of the execution debtor.

For reasons of the errors in the court's charge, the judgment in favor of the plaintiffs as to so much of the property as to which there was any real controversy is reversed, and, because it is shown by the undisputed testimony that the defendants were entitled to recover said property from the plaintiffs, and have the title acquired thereto under execution quieted, judgment is here rendered in their favor therefor. So much of the judgment as was rendered either for plaintiffs or defendants, on the peremptory instruction of the court, is affirmed.

*Affirmed in part, and reversed and rendered in part.*

Writ of error refused.