ALEXIS FORTIN, Appellee, v. C. C. SEDGWICK and MRS. C. C. SEDGWICK, Appellants.

**Execution sales:** EXCESSIVE LEVY: VALIDITY.  No more property should be levied upon and sold under execution than is reasonably necessary to satisfy the debt and costs, and a levy may be so far excessive as to render the sale fraudulent and void, although mere inadequacy of a bid at an execution sale will not of itself render it invalid.

*Appeal from Woodbury District Court.—* HON. F. R. GAYNOR, Judge.

THURSDAY, FEBRUARY 7, 1907.

ACTION in equity to set aside a sheriff's deed and quiet title to land.  Decree for plaintiff, and defendants appeal. The opinion states the material facts.— *Affirmed.*

*Struble & Stiger* and *W. G. Sears,* for appellants.

*Milchrist & Scott, Sullivan & Griffin,* and *A. J. Granger,* for appellee. ·

WEAVER, J.— The property in controversy consists of four hundred and eighty-five acres of land in Woodbury county, Iowa, and at the time now in question had a market value of $30,000 and a rental value of at least $2,000 per year. It formerly belonged to· one Bruganier who conveyed a part of it one O. C. Tredway and the remaining interest in the land was conveyed or passed by will to said Tredway and his wife, Elizabeth. Thereafter, in the year 1899, O. C. Tredway conveyed all his interest to Elizabeth Tredway, but the deed was not placed on record. In September, 1900, O. C. Tredway employed C. C. Sedgwick, who is a professional. abstracter of titles to prepare an abstract of title to a portion of this land, and thereafter, the bill for this service not being paid, Sedgwick brought suit upon it in justice's court and obtained a judgment thereon against O. C. Tredway in the sum of $18.55 with costs taxed at $4.20. On July 29, 1901, a transcript of said judgment was filed in the office of the clerk of the district court of Woodbury county. Soon after the last-mentioned date an execution was issued upon said judgment and levied upon all of said land, and on October 24, 1901, the entire tract was sold by the sheriff to said Sedgwick for the amount of the judgment, interest, and costs. For some reason Sedgwick refrained from paying the costs and receipting the judgment, for which reason the sheriff withheld his return upon the execution and his certificate of sale until the year of redemption had expired, when Sedgwick settled with the sheriff and received a deed for the entire tract which he placed on record. Pending these developments and on or about October 2, 1901, Elizabeth Tredway, then the ˜sole owner of the land, entered into a written contract to sell

and convey the same to the plaintiff herein for $28,500, of
which sum there was an advance payment made of $1,000,
the remainder to be paid on March 5, 1902, at which time
Mrs. Tredway undertook to make a conveyance accompanied
by abstract showing a clear title.   An abstract was thereupon
secured and submitted by plaintiff to counsel for their opin-
ion.   The abstract failed to note the Sedgwick judgment
or the sheriff's sale thereunder, and showed an apparent per-
fect title in Mrs. Tredway subject only to certain liens
and charges aggregating but a small fraction of the value
of the property.   On March 5, 1902, plaintiff relying upon
said showing of title paid Mrs. Tredway about $20,000, and
retained, for the time being the remainder of the agreed
price until all the aforesaid liens and charges should be re-
moved. . These matters appear not to have been fully ad-
justed until late in the year 1904, and at that time, in con-
summating the deal, the sheriff's deed to Sedgwick, which
had been recorded since the date of plaintiff's purchase, was
discovered, and this action instituted to set it aside.   At the
sheriff's sale no one was present except the officer and Sedg-
wick himself.   The land was first offered in forty-acre tracts,
but Sedgwick refrained from bidding until the tract was
offered as a whole and was then struck off to him for the
amount of his claim and costs, $40.90.   A sale of any one
quarter section of the land at two-thirds its fair value would
have produced more than enough to satisfy every apparent
lien or claim, including Sedgwick's, existing against the
property.   Indeed, some of those apparent claims were only
nominal in character or had in fact been satisfied, and it is
probable that the sale of any forty acres of the land at a fair
valuation would have produced more than enough to clear
the title to the whole.   Although procuring the sheriff's deed
in October, 1902, Sedgwick made no assertion of title there-
under save to record his deed.   He did not take or demand
possession, or pay the taxes or demand or receive any rent,
and it was only when the true condition of the record title

was discovered by plaintiff and an effort made to cure the
defect that he came forward to assert his ownership. Other
facts of the same general nature and tendency are disclosed
by the record, but we will not stop to rehearse them. Alto-
gether the record makes up a case for the appellants which
is peculiarly barren of any element appealing to the favorable
consideration of a court of equity. Passing by questions
raised by counsel as to homestead rights, we are content to
base our affirmance of the decree below upon the fraud in law,
if not in fact, with which the sheriff's sale and deed are
tainted.

To maintain the unconscionable advantage which his
deed, if upheld, would give him, the appellant claims to oc-
cupy the position of an innocent purchaser. There is noth-
ing perhaps to clearly show that, at the time of his levy and
sale, he knew of the existence of the contract between the
appellee and Elizabeth Tredway, though it seems scarcely
possible that a sale of such magnitude should not have been
a matter of public notoriety or should not have come to the
attention of a professional abstracter to whom all such deals
are a matter of peculiar interest. But assuming that he was
utterly ignorant of the real ownership of the land except as
disclosed by the record (which is not easy to credit) the very
fact that he believed O. C. Tredway to be the owner of the
land uncomplicated by conveyances and contracts not of rec-
ord, his conduct in insisting upon a sale of the entire tract
for such a trifling sum is still less compatible with good faith.
We have held that an officer in seeking to enforce an execu-
tion for the collection of money is in duty bound to observe
the statute which provides that he shall " in all cases select
such property in such quantities as will be likely to bring the
exact amount to be raised, as nearly as practicable." Code
section 3970. Even in the absence of a statute a violation
of this most equitable rule would doubtless be condemned by
the courts. If this statute is not to be cast aside or ignored
as a meaningless form of words which sheriffs and execution

plaintiffs are under no obligation to heed, one can hardly imagine a more flagrant instance calling for its application than is here presented. It is not seriously disputed that the land as a whole is worth about $70 per acre, while it was sold for less than nine cents per acre. It sometimes happens that the property to be levied upon is a single city lot or other property so improved that any division of it for the purpose of sale is impracticable, and in such cases it may be that a sale of the entire property for the payment of a comparatively small judgment may be justified. *Bank v. Shinn,* 130 Iowa, 365.

In the case before us there is not the slightest excuse of this nature. The property was farm land surveyed into forty-acre tracts, and it is a matter of common knowledge that for the last ten years in this State farm lands of average quality have been eagerly sought after, and even when offered in small subdivisions have found ready purchasers at fair prices. The failure of Sedgwick who was the only person present at the sale to bid upon the forty-acre tracts when offered can have no other explanation than that he knew the title had passed from O. C. Tredway before the judgment became a lien and wished to so embarrass the further transmission of title as to induce the payment of his claim, or that it was done in furtherance of a plan by which he hoped, under the forms of law, to obtain a very valuable property for a merely nominal consideration. A court of equity will not lend its assistance to such an enterprise. In *Cook v. Jenkins,* 30 Iowa, 452, we had occasion to deal with a case where land worth $800 was sold on an execution calling for about $21. The execution plaintiff bid in the property for $535, the remainder over and above the amount necessary to satisfy the execution being deposited with the clerk for the use of the debtor. It was there held that it was a case of excessive levy, "a fraud in fact upon the defendant." The court further said: "The sheriff and plaintiffs in the attachment proceedings could not have been ignorant that the

levy was excessive. . . . It was a direct violation of the statute requiring the officer to levy upon property in such quantities as will be likely to realize the exact amount of the execution and costs. We know of no principle of equity that will sustain proceedings which work such gross injustice and oppression except in cases where innocent parties claim rights under them." If that case was one of " gross injustice " the one now before us is so much more inequitable that there is no room for hesitation in stamping it with our disapproval.

Even in the absence of other circumstances characterizing the case, the enormous disproportion between the value of the property sold and the sum to be raised is, in itself, ground from which the inference of fraud is legitimate. In, *Tiernan v. Wilson,* 6 Johns. Ch. (N. Y.) 415, the chancellor discussing this rule, said: " There was then no excuse for such an outrageous breach of duty as setting up the plaintiff's interest in two distinct lots — that is, his moiety of 209 acres in one lot, and his moiety of 236 acres in another lot — and exposing that whole interest which, at the lowest calculation, was worth nearly $800 in one parcel and upon one bid to raise so small a sum as $10.50. I shall, therefore, set the sale aside as fraudulent and void in law." In the same case it was also said that the rule that no more property should be sold than is reasonably necessary to satisfy the debt rests on principles of obvious policy and universal justice and does not need the aid of any positive law to support it. In Mr. Rorer's work on Judicial Sales, section 730, it is said that " sales in mass of real estate held in parcels are not to be countenanced or tolerated." The same rule was applied by the Supreme Court of Georgia in a case where two lots of the value of $1,400 were sold to satisfy a judgment of less than $100. *Forbes v. Hall,* 102 Ga. 47 (28 S. E. 915, 66 Am. St. Rep. 152). It has been held in Kentucky that sheriff's sale under execution of more land than is reasonably necessary to satisfy the debt is unauthorized and void. *Patterson v. Carneal's Heirs,* 3 A. K. Marsh. (Ky.) 618 (13 Am.

Dec. 208); *Adams v. Keiser,* 7 Dana (Ky.) 208.   The case
of *Groff v. Jones,* 6 Wend. (N. Y.) 522 (22 Am. Dec.
545), involved a sheriff's sale of land worth $10,000 to sat-
isfy an execution for $100, and it was there held that, where
the excess in the quantity of land sold is so very gross, and
where there are other suspicious circumstances connected with
the sale, it will be held fraudulent and void.   In *Lehner v.
Loomis,* 83 Iowa, 420, we said of a sheriff's sale, under the
circumstances there in question, of property worth $10,000
upon a bid of $31.50, there was such a gross inadequacy of
consideration as to shock the conscience and impress the court
strongly with the injustice of the transaction.   " In such
cases," we remarked, " it has always been said that where
there are other circumstances of an excusatory character on
part of the plaintiff the gross inadequacy of the consideration
will establish the fraudulent character of the transaction."
In *Reed v. Carter,* 3 Blackf. 376 (26 Am. Dec. 422), the
sheriff held an execution upon a judgment for a balance of
about $20 on which he sold a valuable tract of one hundred
acres of land worth $2,000.   Four or five acres might have
been conveniently taken from one end of the tract and sold
for more than sufficient to pay the small balance due on the
execution.   The court there say:  " The sheriff had no
right to sell a tract of land containing one hundred acres
and worth between $1,000 and $2,000 merely to raise the
trifling sum of $20, when the sale of four or five acres alone,
which might with propriety have been separated from the
tract, would have produced the amount due.  .  .  .   The
sheriff in thus selling 100 acres of valuable land to raise the
small sum which he was authorized to collect committed a
breach of duty.   His conduct was a fraud on the complain-
ant and same must be set aside."

The cases we have cited fairly represent the trend of
the authorities, and the doctrine announced is so just and
reasonable in itself as to command the assent of both the
judgment and conscience of every fair-minded man.   The

claim of the appellant that the land was subject to prior liens and charges which rendered it hazardous to offer to buy less than the entire amount is not well founded.   Even assuming that the alleged claims and charges were all that he asserts them to be, they were insufficient to justify the sale upon which his alleged title is based.   The inadequacy is still so gross as to bring the transaction within the spirit and letter of the equitable rule hereinbefore announced.   None of the cases cited by the appellant afford a precedent for affirming the sale now under consideration.   The one which may be most plausibly urged as justifying the position of the appellant is *Griffith v. Harvester Co.,* 92 Iowa, 634, where the sheriff's sale of one hundred and sixty acres of land of the value of about $3,000 subject to a mortgage of $500 upon a bid of $169.20 was upheld.   Of this case it may be said that the litigation involved numerous other questions which were discussed with considerable fullness, and evidently the effect of the inadequacy of the bid was given slight consideration. The statute which was held to govern such sales in Cook v. Jenkins, *supra,* was in no manner referred to, and its application to cases of that character does not appear to have been passed upon or distinguished, nor was the precedent afforded by the Cook case mentioned.   The equities in plaintiff's favor were in many respects much less persuasive than those presented by the record before us.   The plaintiff had been personally notified of the commencement of the action and levy of the writ of attachment upon his land and with that knowledge appears to have wholly neglected to look after or protect his interests until after the property had been sold and the period of redemption had expired.   In view of the fact that in said decision the court's attention was apparently not directed to the statute regulating the powers and duties of the sheriff with reference to the levying of an execution and limiting the quantity and value of the property which might be lawfully taken and subjected to sale, but rather to the single question of the adequacy of the consideration for which

the land levied upon was sold, we are disposed to hold that said precedent is not controlling in this case.   It may be admitted that mere inadequacy of a bid, without more, will not invalidate a sale, but such concession in no manner detracts from the other rule that a levy may be so excessive as to afford ground for avoiding it as fraudulent.

We think it unnecessary to pursue this discussion any farther.   The case is one of that character the mere statement of which indicates its equities with such clearness that very little argument or citation of authorities is necessary.

The decree of the district court was clearly right, and it is therefore *affirmed*.