FRED JONAS, Appellant, v. MICHAEL WEIRES, CRAIG & RAY, G. M. CRAIG and W. F. RAY.

| 134 | 47  |
| 138 | 121 |
| 138 | 715 |

**Wills:** VESTED ESTATES: SALE ON EXECUTION. The interest of one who takes a vested remainder under the terms of a will is subject to sale on execution before he comes into possession; and this rule is not affected by a provision in the will that when the devisees come into enjoyment the indebtedness of any one of them to another shall be paid out of his share before the remainder is paid over to him.

**Justices of the peace:** JURISDICTION. Under the provisions of the Code of 1873, a Justice of the Peace acquired jurisdiction of a non-resident in the township of plaintiff's residence, where service was had in the county although in another township.

**Same.** Where there is no qualified Justice in the proper township the suit may be brought in an adjoining township, and as no record is required to be made of the fact, the statutory presumption that there was a valid reason for bringing it in the adjoining township obtains.

**Execution sales:** INADEQUACY OF PRICE. Where an effectual levy cannot be made on an undivided interest in a portion of a tract of land, the fact that the value of the entire interest is greatly in excess of the judgment, will not show such fraud as to render a sale thereof void.

*Appeal from Butler District Court.*— HON. CLIFFORD P. SMITH, Judge.

TUESDAY, APRIL 9, 1907.

ACTION in equity to set aside a sheriff's deed to plaintiff's undivided interest in certain real property, and to quiet title in plaintiff to such undivided interest, as against defendants Craig & Ray, who claim to be owners thereof under such sheriff's deed. Decree for defendants, from which plaintiff appeals.— *Affirmed.*

*N. W. Scovel* and *E. P. Andrews,* for appellant.

*Courtwright & Arbuckle* and *Geo. M. Craig,* for appellees.

McCLAIN, J.— In 1886 the father of plaintiff died, leaving a will, hereafter set out, by the terms of which plaintiff was given some interest in a tract of land in Butler county, subject to a life estate in his mother, who survived the testator.   Plaintiff, who had resided in Butler county in 1878, and had since that time been a nonresident of the State, returned temporarily to Butler county to attend his father's funeral, and there, on the 16th day of September, 1886, in Jefferson township of that county, was served with notice of an action brought before one Daggett, a justice of the peace in and for West Point township of that county, in which Weires, one of the defendants in this case, sought to recover judgment against him for $14.90, with interest, on an open account.   This plaintiff made no defense in that action, and judgment was rendered against him by Justice Daggett on the return day for $22.10, with costs.   A transcript of this judgment having been filed with the clerk of the district court of Butler county, execution was issued March, 1902, upon said judgment, at the request of Weires, and levy was made by the sheriff on the undivided one-fourth interest in the land referred to in plaintiff's father's will, which is the interest he now claims in said land as having accrued to him by virtue of the provisions of the will. On April 1, 1902, the interest thus levied upon as belonging to plaintiff was sold by the sheriff to said Weires for $68.37, being the amount of the judgment, with interest and costs; the recital in the sheriff's return of the sale being that he exposed " to sale at public auction the property aforesaid to the highest and best bidder in forties, and, receiving no bids therefor, I then and there offered it as a whole, sold all the above-described real property, to wit, an undivided

one-fourth of," etc.— describing the land. Subsequently Weires assigned his certificate of sale to Craig & Ray, who had been his attorneys in the action before the justice of the peace, and on April 3, 1903, the sheriff made his deed in due form to Craig & Ray, for said undivided one-fourth interest. The grounds relied upon by plaintiff as entitling him to have the deed set aside are: First, that his interest under his father's will was contingent at the time of the levy and sale, and not subject to sale under execution; second, that the justice of the peace rendering the judgment under which the sale was had was without jurisdiction to render such judgment; and, third, that the sale was for a grossly inadequate consideration and fraudulent.

I.   The interest of plaintiff in the property accrued to him under the following provisions of his father's will:

(1) I give, devise, and bequeath unto my beloved wife, Sophia Jonas, my entire property, both personal and real, of every kind and nature, during her natural lifetime after first disposing of sufficient to pay all of my just debts.

(2) And that at the death of my beloved wife, all the property devised or bequeathed to her as aforesaid, or so much thereof as may then remain unexpended, I give and bequeath to my four sons, William Jonas, Frederick Jonas, Charles Jonas, and Henry Jonas, to be divided equally between them and to their heirs and assigns forever.

(3) At the death of my beloved wife, and when final settlement of my estate is made, if either of my sons should be indebted to either of the others, I desire that such indebtedness should be paid out of said son's share before his portion is paid over to him.

The contention for plaintiff, with reference to the construction of this will, is that he, being the Frederick Jonas mentioned in the second paragraph thereof, had thereunder

1. WILLS: vested estates: sale on execution.

only a contingent estate, not subject to sale under execution, and that his interest did not become vested until the death of his mother in March, 1905, which was after the sheriff's sale and deed,

and that therefore the levy and sale were invalid. But an examination of the terms of the will leads to a contrary conclusion. The widow took only a life estate, with no power to dispose of the fee save for the payment of testator's debts. As the testator could only dispose by will of his property remaining after the payment of his debts, the practical effect was to give his widow a life estate, and provide for the distribution of the remainder to his four children and their heirs, and the provisions of the will indicate an intention to determine the rights of these four children by the very language of the instrument. There was no contingency remaining to be determined after the death of the widow. True enough, the testator says that, after the death of the widow, the property is given and bequeathed to be equally divided among such children. But such language is to be interpreted as referring to the use and enjoyment, and not to the vesting of the rights, *Archer v. Jacobs,* 125 Iowa, 476; *Shafer v. Tereso,* 133 Iowa, 342. If the language of the will had contemplated that only the survivors of the children named should share in the property after the death of the widow, then there would have been a contingent remainder to them, and in that event the rule announced in *Taylor v. Taylor,* 118 Iowa, 407, that a contingent remainder is not subject to sale under execution, would have been applicable.

But the language of this will does not indicate that only the survivors were to share in the property. Instead of directing the property to be divided between his children or their heirs, as in the Taylor case, the testator here directs that it is to be divided equally between them and their heirs. Even under the rule of construction adopted by the majority in the Taylor case, the will now before us must be construed as creating a vested, and not a contingent, remainder. As is said in that case: "If the gift is immediate, though its enjoyment be postponed, it is vested; but if it is future, and is dependent on some dubious circumstances through

which it may be defeated, then it is contingent." And the rule is recognized that " the law leans towards the vesting of remainders." Further, to the effect that the courts will construe an ambiguous provision as creating a vested, rather than a contingent, remainder or an executory devise, see: *Archer v. Jacobs,* 125 Iowa, 467; *Shafer v. Tereso,* 133 Iowa, 342; *Burleigh v. Clough,* 52 N. H. 267 (13 Am. Rep. 23); *Rumsey v. Durham,* 5 Ind. 71; *Doe v. Provoost,* 4 Johns. (N. Y.) 61 (4 Am. Dec. 249); *Moore v. Lyons,* 25 Wend. (N. Y.) 119; *Chapin v. Crow,* 147 Ill. 219 (35 N. E. 536, 37 Am. St. Rep. 213). The uncertainty which characterizes a contingent, as distinguished from a vested, remainder, is uncertainty as to the person or the event, and not as to the time of enjoyment. *Shafer v. Tereso, supra; Everitt v. Everitt,* 29 N. Y. 39, 75; *Beatty's Adm'r v. Montgomery's Ex'r,* 21 N. J. Eq. 324; *Havens v. Sea Shore Land Co.,* 47 N. J. Eq. 365 (20 Atl. 497); *Manderson v. Lukens,* 23 Pa. 31 (62 Am. Dec. 312); *Heilman v. Heilman,* 129 Ind. 59 (28 N. E. 310); *Schuyler v. Hanna,* 31 Neb. 307 (47 N. W. 932). If futurity is annexed to the substance of the gift, the vesting is suspended; but, if it appears to relate to time of payment only, the legacy vests instanter, and words directing division or distributing between two or more objects at a future time are equivalent to a direction to pay. In *Wilhelm v. Calder,* 102 Iowa, 342, the devise was expressly to the children who should be living at a future time, and the conclusion reached in the case *In re Crane,* 164 N. Y. 71 (58 N. E. 47), is based on a similar construction of the terms which are employed in this will.

The conclusion just indicated, based on the language of the first and second paragraphs of the will, is not affected by the provisions of the third paragraph, expressing a desire that, when the other devisees come into enjoyment of their interests at the death of the widow, the indebtedness of any one of them to another is to be paid out of his

share before the remainder is turned over to him. Even if this direction created a charge on the interest of one of the devisees in favor of another, it would affect the amount by him to be realized, and not the time of the vesting of his interest. It is an uncertainty as to the person who is to take, and not as to the quantity or value of the interest which he takes, that characterizes a contingent, as distinguished from a vested, remainder. The purchaser would, of course, take it subject to this uncertainty, but he would take whatever the devisee would have taken, and the interest provided for is therefore vested, and not contingent. That it is only uncertainty as to the person who is to take, or as to the event on which the vesting of an interest is made to depend, that prevents a contingent remainder being salable under execution, see: *Archer v. Jacobs,* 125 Iowa, 467; *Taylor v. Taylor,* 118 Iowa, 407, 415; *Ducker v. Burnham,* 146 Ill. 9 (34 N. E. 558, 37 Am. St. Rep. 135); *Railsback v. Lovejoy,* 116 Ill. 442 (6 N. E. 504). That a vested remainder is subject to sale under execution, although there may be some uncertainty as to its value or amount, depending on the happening of future events, is well settled. See *Woodgate v. Fleet,* 44 N. Y. 1; *Arzbacher v. Mayer,* 53 Wis. 380 (10 N. W. 440). Counsel for appellant rely upon *McClain v. Capper,* 98 Iowa, 145. But that case is explained in *Taylor v. Taylor,* 118 Iowa, 407, 414, as holding that a devise of the remainder after a life estate to devisees named, or the survivors of them, creates in such devisees only a contingent interest, as it cannot be ascertained until the termination of the life estate who will be entitled to take as survivors. There is no escape from the conclusion that plaintiff's interest provided for in his father's will vested in him on his father's death, and was subject to sale on execution against him.

II. The validity of the judgment under which plaintiff's interest was sold is attacked on the ground that the justice who rendered such judgment had no jurisdiction of

plaintiff (defendant in that action).   Under provisions of
the Code of 1873 which were in force when
the judgment was rendered, a justice of the
peace had jurisdiction in general coextensive
with his county, and, as against a defendant resident in the
same county as that of plaintiff's residence, a suit might
be brought either in the township where the plaintiff or the
defendant resided, or in any other township of the same
county in which actual service on the defendant was had.
See sections 3507, 3509, 3510, of the Code of 1873, which
are the same as sections 4476, 4478, 4479 of the present
Code.   By section 3512 of the Code of 1873 (incorporated
in somewhat different language into section 4480 of the
present Code), it was provided that "if none of the de-
fendants reside in the State, suit may be commenced in any
county, and township, wherein either of the defendants may
be found."   The contention for appellant is that this last
provision made it obligatory that suit against the defendant
who was a nonresident of the State should be brought in the
township where he was found, and deprived the plaintiff
of the right to institute the suit in the township of his resi-
dence, though he served the defendant in another township
of the same county.   This was not, we think, the legisla-
tive intent.   There seems to be no reason for holding that a
nonresident of the State, though served in the same county,
should not be compelled to defend the suit brought in the
township of plaintiff's residence.   We think the plaintiff in
the action before the justice of the peace had the right to
institute the suit in the township of his residence, if he se-
cured service on the defendant in that suit in another town-
ship of the same county, although such defendant was a non-
resident of the State.

But, on another ground, we also reach the conclusion
that the justice of the peace acquired jurisdiction.   In sec-
tion 3514 of the Code of 1873 (section 4482 of the present
Code), it is provided that, if there is no justice in the

2. JUSTICES OF
THE PEACE:
jurisdiction.

proper township qualified or able to act, the suit may be

3. SAME. commenced in any adjoining township in the same county, and there is no requirement in section 3515 of the Code of 1873 (section 4484 of the present Code) that the reason for instituting the suit in another township shall be made a matter of record by the justice. Under section 3669 of the Code of 1873 (section 4648 of the present Code), it is provided that the proceedings of courts of inferior jurisdiction within the State " shall be presumed regular except in regard to matters required to be entered of record, and except where otherwise expressly declared." There is no question but that the plaintiff in the suit instituted before Justice Daggett might have proceeded before a justice of the peace in Jefferson township in which service on the defendant in the suit could be secured, and that, finding no justice qualified to act in that township, he might have brought his action before any justice of the peace in an adjoining township, and the presumption created by the statute requires us to assume that, if Daggett was a justice of the peace in an adjoining township, there was the statutory reason for bringing the action before him. *Church v. Crossman,* 49 Iowa, 444; *Brown v. Davis,* 59 Iowa, 641; *Little v. Devendorf,* 109 Iowa, 47; *Baker v. Jamison,* 73 Iowa, 698; *Chesmore v. Barker,* 101 Iowa, 576; *Schlisman v. Webber,* 65 Iowa, 114. The townships of Jefferson and West Point, in Butler county, have a common corner, but are not otherwise adjoining; but they are, by the fact of having a corner in common, " adjoining " townships, within the meaning of section 3514 of the Code of 1873. *Holmes v. Carley,* 31 N. Y. 289; *Jebb v. Chicago & G. T. R. Co.,* 67 Mich. 160 (34 N. W. 538). The judgment under which plaintiff's undivided interest in the land in question was sold on execution was therefore not void for want of jurisdiction in the justice to render it.

III. There was evidence introduced for plaintiff tending to show that, at the time of the execution sale, an undi-

vided one-fourth interest in the tract of land in question

**4. EXECUTION SALES: inadequacy of price.** was worth $2,000, and it is contended that the sale of an interest of this value for a judgment of $22 in amount, inclusive of interest and costs, was for such a grossly inadequate consideration that it should be set aside for fraud. In general, inadequacy of consideration alone is not sufficient evidence of fraud to justify the setting aside of an execution sale on that ground. *Sheppard v. Messenger,* 107 Iowa, 717; *Griffith v. Milwaukee Harvester Co.,* 92 Iowa, 634; *Sigerson v. Sigerson,* 71 Iowa, 476; *Equitable Trust Co. v. Shrope,* 73 Iowa, 297; *Parker v. Bluffton Car Wheel Co.,* 108 Ala. 140 (18 South. 938); *Bank v. Doherty,* 37 Wash. 32 (79 Pac. 486); *McCoy v. Brooks* (Ariz.), 80 Pac. 365; *Graffam v. Burgess,* 117 U. S. 180 (6 Sup. Ct. 686, 29 L. Ed. 839); *Clark v. Bell* (Tex. Civ. App.), 89 S. W. 38. In *Fortin v. Sedgwick,* 133 Iowa, 233, a sale under execution of a farm of 485 acres, worth $30,000, for $40.90, was set aside as fraudulent, although the proceedings were regular; but the ground for setting it aside was fraud in making an excessive levy, and in not bidding on a single tract when the land was offered by the sheriff in forty-acre tracts as required by law, it appearing that the value of any one of the forty-acre tracts in excess of incumbrances was ample to satisfy the judgment. In that case, *Cook v. Jenkins,* 30 Iowa, 452, is relied on, in which it was held that there was an excessive levy under a writ of attachment, and the sale was set aside on that ground. It is conceded in *Fortin v. Sedgwick, supra,* that mere inadequacy of the bid, without more, will not invalidate the sale, and the conclusion of the court was supported mainly on the ground that the levy was excessive, as the sheriff might have made a sufficient levy by resorting to any one of the forty-acre tracts included in the larger tract which was in fact levied upon. But the circumstances in the case before us are wholly different. The plaintiff had only an undivided interest in the

tract of land involved, and this interest was subject to a
life estate.   It would have been impossible for the sheriff
to levy upon and sell plaintiff's undivided interest in a por-
tion of the tract, for plaintiff was not seised as a tenant in
common of an undivided interest in each of the parcels, but
only an undivided interest in the whole.   A tenant in
common may make a valid sale of an undivided fraction of
his undivided interest, but he cannot sell his interest, or any
portion thereof, in a part of the premises by metes and
bounds, because this would interfere with his co-tenants'
right of partition, and for this reason an execution sale of
the interest of a tenant in common in a portion of the prem-
ises subject to the common ownership cannot be made.   *Farr
v. Reilly,* 58 Iowa, 399.   And see *Laraway v. Larue,* 63
Iowa, 407.

It may be said that the assumption in the case of *Farr
v. Reilly, supra,* as to the invalidity of a conveyance by one
co-tenant of his interest in a part of the property owned in
common, is not in harmony with the general current of the
authorities, although it accords with the cases cited in the
opinion; but the weight of authority is with the proposition
that such a conveyance is valid by way of estoppel as against
the grantor, though voidable or subject to be defeated if
prejudicial to the interests of the co-tenants.   In other
words, the grantor cannot bind a court of equity in making
partition to set aside to his grantor a share of a particular
parcel, nor can such purchaser insist on the enjoyment of
an interest in that particular parcel as against the other
tenants in common; but if the other tenants should consent
to the conveyance, or the court should set aside as a part
of grantor's share the portion of the common property to
which his conveyance relates, neither the grantor nor the
grantee can complain.   As supporting this general view, see
*Frederick v. Frederick,* 219 Ill. 568 (76 N. E. 856);
*Barnes v. Lynch,* 151 Mass. 510 (24 N. E. 783, 21 Am. St.
Rep. 470), and note; *Benedict v. Torrent,* 83 Mich. 181

(47 N. W. 129, 11 L. R. A. 278, 21 Am. St. Rep. 589), and note; *Kenoye v. Brown,* 82 Miss. 607 (35 South. 163, 100 Am. St. Rep. 645), and note; *Worthington v. Staunton,* 16 W. Va. 208; *Ballou v. Hale,* 47 N. H. 347 (93 Am. Dec. 438); *Gates v. Salmon,* 35 Cal. 588 (95 Am. Dec. 139).

But, whatever may be the correct view as to a voluntary conveyance, there is no reasonable question under the authorities that an execution creditor is not bound to levy upon or buy in his debtor's interest in a part of the property in which his undivided interest exists. Evidently the execution creditor is not required to take his chances as to an objection by co-tenants, or the possible action of a court of equity in setting off to the debtor that part of the common property in which the creditor has purchased a share. *Whitton v. Whitton,* 38 N. H. 127 (75 Am. Dec. 163); *Porter v. Hill,* 9 Mass. 34 (6 Am. Dec. 22); *Blossom v. Brightman,* 21 Pick. (Mass.) 283; *Smith v. Benson,* 9 Vt. 138 (31 Am. Dec. 614); *Swift v. Dean,* 11 Vt. 323 (34 Am. Dec. 693); *Champau v. Godfrey,* 18 Mich. 37 (100 Am. Dec. 133); *Butler v. Roys,* 25 Mich. 53 (12 Am. Rep. 218); note to *Smith v. Huntoon,* 23 Am. St. Rep. 646; Freeman on Co-Tenancy (2d Ed.), section 216.

In this case there was not therefore an excessive levy, for the sheriff could not have made an effectual levy on plaintiff's undivided interest in a portion of the tract; nor was there any fraud on the part of the purchaser in not bidding upon plaintiff's interest in one of the forty-acre tracts, in which, as appears by the sheriff's return, the property was first offered, without securing a bidder, before the interest in the entire tract was offered and sold. The sheriff could not properly offer for sale plaintiff's undivided interest in one of the forty-acre tracts, nor could the purchaser have properly bid under such an offer. Where the property is not capable of division, the fact that the value of the property is greatly in excess of the amount of the judgment under which it is

sold does not show fraud. *State Savings Bank v. Shinn,* 130 Iowa, 365; *Peterson v. Little,* 74 Iowa, 223.

The holder of a judgment is not to be deprived of his right to satisfy his judgment out of the property of the judgment debtor, because the only property which he can find is an indivisible parcel greatly exceeding in value the amount of the judgment; nor is there any fraud in bidding only the amount of the judgment and costs. It is for the interest of the judgment debtor that a sale is for as small an amount as possible, sufficient to satisfy the judgment, for he is thereby enabled to redeem it by paying the amount of the judgment and costs. Where the proceedings are in every way regular, no fraud is to be imputed to the purchaser in exercising his legal right to subject the property of his debtor to the payment of the debt. Fraud must be proved, and cannot be presumed from the mere exercise of a legal right.

It is to be noticed also, with reference to the claim of inadequacy of the consideration for the sale of plaintiff's interest, that such interest was subject to an existing life estate, the value of which could not be directly ascertained. The purchaser took subject to the life estate, and subject also to the contingency, apparent if not real, that plaintiff might be indebted to his brothers at the termination of the life estate, and that an effort might then be made to subject his interest to the payment of such indebtedness. Whether the third paragraph of the will in fact created a lien on the interest, which plaintiff might become possessed of on the termination of the life estate, is immaterial. The purchaser would take subject to at least a possibility of a claim that the interest was thus incumbered, and he could not be required to estimate the value in the face of a possible lawsuit.

It is further contended, however, that there were other circumstances which, in connection with the inadequacy of the consideration, tended to show a fraudulent purpose on the part of the defendants to acquire plaintiff's interest in the

property for a small consideration. It is said that plaintiff's brother-in-law lived in the town of Allison, the county seat, and that the sheriff published the notices of the sale in newspapers published in two other towns in the county, and not in a newspaper published at Allison; and that of the three posted notices of the sale only one was posted in Allison, at the courthouse, and the other two in other places in the country. . But it is to be remembered that the plaintiff was not a resident of the county, and there is no reason to assume that defendants knew anything about the relation of the brother-in-law to the plaintiff; nor, if they knew of such relation, that they assumed that notice to the brother-in-law would reach the plaintiff. The sheriff testifies that he gave notice by posting and publication in the usual way, and there is not the slightest evidence of any intention on his part or on the part of the defendants to avoid information reaching plaintiff as to the proposed sale of his interest. Something is said also as to defendants' attempts to collect the claim before bringing suit, and while plaintiff was residing in Minnesota, by sending it to an attorney in Minnesota at a place other than plaintiff's residence, when there was an attorney at the place of his residence to whom it might have been sent. But, as defendants were under no obligation to make an effort to collect their claim in Minnesota before instituting suit thereon when the opportunity arose by the visit of plaintiff to Butler county, we cannot see the least significance in the fact relied upon. If defendants had desired to conceal from plaintiff the fact of the existence of the claim, they would not have sent it to Minnesota for collection.

Finding no circumstance other than that of the inadequacy of consideration to indicate any fraud in the sale, and that the proceedings were in every way regular and proper, the lower court was justified in refusing to set aside the sale on the ground of fraud. Appellant's motion to

strike a portion of appellees' amended abstract, submitted with the case, is overruled.

The judgment of the trial court is therefore *affirmed*.