HARRY FLETCHER et al., Appellees, v. U. S. G. FLETCHER et al., Appellants.

**WILLS:** **Construction—Ambiguity As to Devisees.** Where an ambiguity exists in a will as to the beneficiaries thereunder, the court will, unless there is a manifest intent to the contrary, apply, as an aid to construction, the presumption that the testator intended that his property should pass *in accordance with the laws of descent and distribution.* So held where a devise to a son and his wife was for life ''and then to *their* children after their death,'' the holding being that the remaindermen included a child born of the former marriage of the life-tenant son.

**Headnote 1:** 40 Cyc. pp. 1412, 1451.

*Appeal from Fremont District Court.*—O. D. WHEELER, Judge.

JUNE 25, 1925.

SUIT in partition, and to quiet title. The defendants denied the title of plaintiffs, and by counterclaim prayed that title be quieted in themselves. Decree was entered for plaintiffs substantially as prayed, and the defendants appeal.—*Affirmed.*

*Stason & Stason* and *Vernon Johnson,* for appellants.

*Thornell, Thornell & Adams,* for appellees.

EVANS, J.—The controversy is over the construction of Paragraph 7 of the will of Abraham Fletcher. This paragraph provided as follows:

"Seventh. I will to William H. Fletcher, my son, and Frederickey, his wife, during their natural lifetime and then *to their children* after their death [description]."

This controversy is concentrated upon the two particular words "their children."

The testator was the father of William H. Fletcher, devisee. The will was made in 1885. Whether, at the time of the making of said will, there was already issue to the marriage of W. H. and Frederickey, does not appear from the record. It seems to be assumed in the briefs, however, that there were children of said marriage at that time. William H. Fletcher had also one child by a former marriage, Thomas A. Fletcher. The plaintiffs, appellees herein, are the widow and heirs of Thomas A. Fletcher. Ultimately there were ten children born to W. H. Fletcher, as the issue of the second marriage. The question presented is, do the words "their children" include the children of *each,* or only the children of *both?* The plaintiffs contend for the first; and the defendants for the latter. The ambiguity presented is *latent,* rather than *patent.* That is to say, the words used are not necessarily ambiguous on the face of the instrument. They become ambiguous only by reason of extraneous facts. If William and Frederickey had had no other children than the issue of their marriage, there would be no ambiguity; nor would there be ambiguity if they had no children other than those by former marriages. Under either hypothesis, the words would of necessity apply to such children as they had. Manifestly, therefore, the words are capable of a construction in accord with either contention. Clearly, the pronoun "their" has for its antecedents, "William and Frederickey." The fact that they are husband and wife carries with it a ready implication that the children referred to are the fruit of the union. On the other hand, such is not a necessary implication, though it might be deemed an inviting one, were it not for other consid-

erations to be stated.  Appellants urge that a *strictly* grammatical construction favors their contention.  If this be conceded, yet it appears from the context that the testator's use of this word was not strictly grammatical.  In the three lines which we have quoted from Paragraph 7, this pronoun occurs three times: "their natural lifetime;" "their death;" "their children." Manifestly, "their natural lifetime" means the "natural lifetime" of *each* of them; "their death" means the death of *each* of them; "their children" means the children of ——?

This is perhaps a sufficient indication of the nature of the ambiguity.  It has arisen out of facts extraneous to the instrument, and such facts must be considered in its solution.  Thomas Fletcher sustained the same relation to the testator as did the issue of the second marriage.  There is a well recognized rule of construction of wills, which tends to solve ambiguities in accordance with the laws of descent and distribution.  This rule is stated in 40 Cyc. 1412, as follows:

"Where any ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption that the testator intended that his property should go in accordance with the laws of descent and distribution will be applied as an aid in construing the will."

The foregoing statement is fully sustained by authorities therein collated, and we shall not enlarge upon it.  The same rule is recognized in *Cope v. Cope*, 45 O. St. 464, 470, as follows:

"Though the privilege of making a will is one highly respected by the law, yet, as the law itself makes a just and equitable disposition of the property of an intestate among the natural objects of his bounty, it should prevail over the provisions of any attempted disposition that are so obscure that the general scheme and purpose of the testator cannot be ascertained with any reasonable certainty."

We recognized the rule in *Marvick v. Donhowe*, 191 Iowa 214.  We said:

"The law favors such a construction of a will as most nearly conforms to the statutory rule of descent and distribution."

"The devolution of title to the property of a person dying, cast by the statute of descent and distribution upon his heir or

next of kin, makes it indispensable, if a testator wish to disinherit him, not only to express his intention to that effect, but to vest the title, by plain words of gift, or necessary implication, in some other person.'' 3 Woerner on American Law of Administration (3d Ed.) 1384, Section 418.

The ambiguity arising in the application of this will to the object of the testator's bounty, calls for the application of this rule. We think the presumption arising under this rule is strongly fortified by the context provisions of the will, and by the circumstances surrounding the testator.

Thomas Fletcher sustained a closer relation to the testator than did any other of the children of William H. Fletcher. When his mother died, he entered the home of his grandfather, the testator, and there remained until his father remarried. He had at all times lived in the near neighborhood of his grandfather, and for a time after his marriage lived in the same house with his grandfather. Paragraph 7 was the only provision of the will made for the benefit of the children of William H. Fletcher. If Thomas was not included as a beneficiary of this paragraph, then he was wholly overlooked by the testator.

It further appears from the provisions of the will that, at the time of its making, three of the testator's children had died, leaving issue. These were John, David, and Eleanor. Paragraphs 2, 3, and 4 of the will make special provision for the *issue* of such deceased children. The provisions of the will indicate the purpose of the testator to distribute his property equitably among his heirs. The ninth paragraph provides that any residue ''be equally divided among my heirs.'' Appellants argue plausibly that the construction of the will which is contended for by appellees would be the equivalent of saying that children of Frederickey by former marriage, if any, would have been included within the intention of the testator. This argument overlooks the fact that the rule of presumption in accordance with the laws of descent would not operate in favor of the children of Frederickey by a former marriage. This is the rule upon which we predicate decision herein.

Such was the holding of the trial court, and its decree is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.