At the time of his death on the 13th day of *Page 432 
November, 1922, Elsworth E. Hudnutt was a resident of Poweshiek county, Iowa, and was the owner in fee simple of the north 1/2 of the northwest 1/4 of section 11, and the southwest 1/4 of the southeast 1/4 of section 2, township 79 north, range 16 west of the 5th P.M., in Poweshiek county, Iowa. He was survived by his wife by a second marriage, Eliza A. Hudnutt, and by a son of his first marriage, Elmer J. Hudnutt. At the time of his death there was a mortgage of $2,000 on the northeast 1/4 of the northwest 1/4 of said section 11; that is, this mortgage was on the east 40 acres of the 80-acre tract in section 11. He left a will which was duly admitted to probate in Poweshiek county, Iowa. This will did not name any executor but it contained certain directions for the executor who would be appointed by the court probating the will.
Item 1 of said will directed the payment of debts, funeral expenses and expenses of administration. Item 2 provided that, if his wife survived him, there was devised and bequeathed to her, in lieu of dower and all distributive share, one-third in value of his entire estate. Item 3 directed the manner in which the property belonging to the estate should be appraised as the basis for reaching the one-third in value thereof which was to be paid to his widow. Item 4 directed that the executor of the will appointed by the court convert the southwest 1/4 of the southeast 1/4 of section 2 into money, that the proceeds from said sale be used in paying the widow's share in the estate, and that any balance of such proceeds be applied to the payment of any mortgage against any real estate of which the testator died seized. Item 5 provided that, if any mortgage existed against any of his property, the executor should pay off such mortgage out of any moneys that might be left after the payment of the one-third in value of the estate devised to the widow, and that, if this should not be sufficient, such executor should make a new mortgage on the northeast 1/4 of the northwest 1/4 of section 11 for the balance required to pay off such mortgage then existing. Items 6 and 7 of said will were as follows:
"Item 6. It is my will, and I do direct that should it be found necessary to obtain a mortgage to take up the one provided for in Item 5 hereof, on any of the above premises, in Item 5 hereof, in carrying out the provisions above named in my Will, I hereby give, devise and bequeath unto my said son, *Page 433 
Elmer J. Hudnutt, such power and authority as shall fully and completely authorize and empower him to renew or extend the mortgage thus given, from time to time, until said premises become his absolutely, or to execute a new mortgage thereon in a sum not in excess of said original mortgage with full power of renewal or extension as above recited.
"Item 7. All of the rest, residue and remainder of my estate, both real and personal, not otherwise disposed of in items above I give, devise and bequeath unto my son, Elmer J. Hudnutt, for his use and benefit, until the youngest child born to him arrives at the age of twenty years, or should said child not live to become twenty years of age then until January 1, 1940. after which the same shall be and become the property of my said son, and his heirs."
Following the death of said Elsworth E. Hudnutt and the probate of his will, the administrator with the will annexed sold the southwest 1/4 of the southeast 1/4 of section 2, as directed; paid the widow the one-third in value of the entire estate; paid the debts and costs of administration; and also paid off the mortgage of $2,000 against the northeast 1/4 of the northwest 1/4 of section 11. This left the entire north 1/2 of the northwest 1/4 of section 11 clear of any mortgage indebtedness and of any claims for debts, costs of administration, and interest of the widow therein. The title and ownership of this land were disposed of in item 7 of the will, and this action involves the claims of the plaintiffs to an interest in this land under the disposition therein made.
Sometime during the year 1923 said Elmer J. Hudnutt, his wife joining him for the purpose of releasing any dower interest, executed a mortgage on the said north 1/2 of the northwest 1/4 of section 11 to the defendant, John Hancock Mutual Life Insurance Company. This mortgage was not paid when due, an action to foreclose same was commenced against said Elmer J. Hudnutt and his wife, a decree was entered, execution issued, and the land sold thereunder. The instant action was commenced after the sheriff's sale and issuance of certificate, but before the delivery of a sheriff's deed. This action is brought to establish rights and interests in said land claimed by the seven living children of Elmer J. Hudnutt. Two of these children, Oliver Hudnutt and Leevert Hudnutt, were of legal *Page 434 
age when the action was instituted, and prosecuted the action in their own individual rights, along with Oliver Hudnutt, as guardian of the remaining five children, Mary Hudnutt, Paul Hudnutt, Lyle Hudnutt, Elsworth Hudnutt and Donald Hudnutt. The youngest of said children, Donald Hudnutt, was five years old at the time of the commencement of this action.
The petition set out the facts which we have stated above, and also set out a copy of the will which was made a part of the petition. The petition alleged that, under the terms of the will of his father, Elmer J. Hudnutt took only a life estate for a period of years; that said life estate was to continue until the youngest child of Elmer J. Hudnutt should reach the age of twenty years, at which time the 80 acres of land described as the north 1/2 of the northwest 1/4 of section 11 should descend to Elmer J. Hudnutt and to his children, being his heirs; that the plaintiffs, who are the seven children of the said Elmer J. Hudnutt, are the owners of an undivided seven-eighths fee title interest in and to said land; that, if said Elmer J. Hudnutt does not live until the youngest child reaches the age of twenty years, the plaintiffs will own the entire fee; that the defendant, John Hancock Mutual Life Insurance Company, by its mortgage, acquired a lien only on the rights and interests of Elmer J. Hudnutt in said land, and by the foreclosure can only subject the life estate of said Elmer J. Hudnutt to the payment of their mortgage; and that, since the execution of the mortgage, said Elmer J. Hudnutt has conveyed all his interest in the land to Margaret Hudnutt, his wife, who is also a defendant. The relief asked is that the court determine the interests of the plaintiffs in the land, and decree them to be entitled to an undivided seven-eighths interest therein free from the claims of the defendant, John Hancock Mutual Life Insurance Company; and that the court also determine the interest, if any, of Elmer J. Hudnutt and Margaret Hudnutt in the land, and grant such other and further relief as the plaintiffs may be entitled to in equity.
[1] The defendant, John Hancock Mutual Life Insurance Company, filed a motion to dismiss the petition on five separate grounds. As the fourth and fifth grounds of the motion are repetitions of matters already set out, we refer to the first three grounds only, which are substantially as follows: (1) That the petition shows on its face that at the time of the execution of the mortgage to the defendant insurance company Elmer J. *Page 435 
Hudnutt had a fee simple title to the land described in the mortgage; (2) That the petition shows on its face that, at the time the mortgage was given to the defendant insurance company by Elmer J. Hudnutt and his wife, the plaintiffs had no interest in the land, and that they have had no interest therein since the execution of said mortgage; (3) That the plaintiffs have no interest in said land for the reason that the will of said Elsworth E. Hudnutt devised said land to Elmer J. Hudnutt and his heirs, and the petition affirmatively shows that said Elmer J. Hudnutt is still alive, and a living person can have no heirs. Upon hearing, the trial court sustained the motion to dismiss and entered judgment against the plaintiffs for costs. From this ruling and judgment the plaintiffs appeal.
It is the contention of the plaintiffs that, under Item 7 of the will of Elsworth E. Hudnutt, deceased, Elmer J. Hudnutt was given a limited estate for years, or, at most, a life estate with a remainder over; that this remainder was contingent as to time, because it did not vest until the youngest child reached the age of twenty; that it was contingent as to persons, because it was to vest in Elmer J. Hudnutt and such of his heirs (children) who would be living when the youngest child reached the age of twenty years; and that the defendant insurance company under its mortgage from Elmer J. Hudnutt and his wife could not have acquired any interest in the land other than that devised to Elmer J. Hudnutt. In order to support this construction the plaintiffs-appellants contend that the word "heirs", as used in Item 7 of the will, was intended to mean "children", and that this is apparent from a construction of the entire instrument. The appellee, on the other hand, contends that, under the provisions of the will, any particular estate which could be construed to have been created by the will, whether an estate for years or for life, immediately vested in Elmer J. Hudnutt upon the death of his father; that the remainder in the property, after the termination of the particular estate, also immediately vested in Elmer J. Hudnutt; that the use of the words "and his heirs", cannot be construed as a devise of any interest in the land to the heirs of Elmer J. Hudnutt, because Item 7 expressly states that the remainder in the land is to become the property of Elmer J. Hudnutt, who was still a living person when this action was tried, and cannot have heirs.
[2] Both appellants and appellee agree that the first and *Page 436 
most important rule of construction of testamentary instruments is, that the intention of the testator must prevail. If this intention can be determined from the language of the entire will, there can be no reason for the application of rules of construction; but if, from the terms of the instrument itself, doubt or ambiguity arise as to the intention of the testator, rules of construction can then be employed in an effort to arrive at such intention. Both sides have quoted copiously from decisions of this court and courts of other jurisdictions, and have argued extensively in support of the respective claims as to vested and contingent remainders. And, although they both agree that, under statutory provision in this state, the rule in Shelley's case is not applicable, they have devoted a portion of their arguments to decisions made in the application of that rule. In the view we take of this case, we deem it unnecessary to go into many of the arguments that have been made by counsel in support of their respective positions.
[3] We think it apparent that whatever disposition was made of the title to the land here involved is contained in Item 7 of the will. This item first gives the land to the son, Elmer J. Hudnutt, for his use and benefit until the youngest child born to him arrives at the age of twenty years, or, in case such child dies before becoming twenty years of age, then the son, Elmer J. Hudnutt, is to have the use and benefit until January 1, 1940. This item then goes on to say, "after which the same shall be and become the property of my son, and his heirs." We think this clearly means that, if the youngest child lives, the particular estate will terminate when such child becomes twenty years of age. If such child died before reaching the age of twenty, and before January 1, 1940, then the particular estate would terminate on the latter date. In any event, there was no uncertainty that a time would be reached when the particular estate would be terminated. In any event, also, Elmer J. Hudnutt has at least an interest in the remainder, because it is specifically devised to him. There is no provision that, in case the son, Elmer J. Hudnutt, is dead at that time, the entire remainder shall then go to his heirs, but the provision is that, on the termination of the estate, the remainder shall become the property of Elmer J. Hudnutt, and his heirs. As Elmer J. Hudnutt could not have heirs if alive, and, as there is no uncertainty that the particular estate will be terminated and that Elmer J. *Page 437 
Hudnutt is to take as remainderman, we do not think there can be said to be such uncertainty either as to time or person as to make the remainder contingent. In our opinion, the words, "and his heirs", if not superfluous, could have no other effect than to describe the estate which Elmer J. Hudnutt was to receive, and could not be considered as designating his children as taking the fee as co-owners with him.
Moreover, we think the construction of Item 7 as giving to Elmer J. Hudnutt a vested remainder is not only warranted by the provisions of Item 7 itself, but that such construction finds support in Item 6 of the will. In Item 6 the testator gives, devises and bequeaths to his "said son, Elmer J. Hudnutt, such power and authority as shall fully and completely authorize and empower him to renew or extend the mortgage thus given (on northeast 1/4 of northwest 1/4 of section 11), from time to time, until said premises become his absolutely." (Italics are ours.) The language here used would necessarily seem to indicate that it was the understanding and intention of the testator that the land was to become the property of Elmer J. Hudnutt absolutely, which is utterly at variance with the construction for which the appellants are contending.
[4] Not only do we think that a reasonable interpretation of the will, as it stands, indicates that it was the intention of the testator that the land in question was to become the property of Elmer J. Hudnutt absolutely, but, even if there be any doubt or ambiguity remaining, the application of the well recognized rules of construction must lead to any such doubt or ambiguity being resolved in favor of the construction for which the appellee contends. One of the elementary rules of construction is that courts do not look favorably upon a construction tending to disinherit those who would take without a will. Ellsworth College v. Carleton, 178 Iowa 845, 160 N.W. 222; Marvick v. Donhowe,191 Iowa 214, 182 N.W. 182. If there had been no will in this case, Elmer J. Hudnutt would have inherited the property, subject to the dower right of testator's widow. If the construction contended for by appellants be followed, Elmer J. Hudnutt would be disinherited to the extent of seven-eighths of the property. Anderson v. Wilson, 155 Iowa 415, 136 N.W. 134; Fletcher v. Fletcher, 200 Iowa 135, 204 N.W. 410.
[5] Another rule of construction by which courts are guided is that uncertainty as to titles is not favored, and, when *Page 438 
not in violation of the manifest intention of a testator, they will construe a remainder to be vested rather than contingent, and will hold a lesser estate to be merged with a larger estate or an estate for years to be merged with a remainder. Archer v. Jacobs, 125 Iowa 467, 101 N.W. 195; Lingo v. Smith, 174 Iowa 461,156 N.W. 402; Jonas v. Weires, 134 Iowa 47, 111 N.W. 453; Ross v. Ayrhart, 138 Iowa 117, 115 N.W. 906; Shafer v. Tereso, 133 Iowa 342,110 N.W. 846.
[6] That the will in question is not a model of clearness and precision must be admitted. If, however, the testator had intended to make his grandchildren, that is, the children of Elmer J. Hudnutt, co-owners with their father in the remainder in the land, it seems only reasonable to suppose that the person who drafted the will would easily have found language with which to express such an intention more clearly. We are satisfied that the use of the words "and his heirs", as they appear in Item 7 of the will, are not sufficient to show such an intention, and the word "children" cannot be substituted for the word "heirs", unless it appears from the whole will that the testator confused the terms and used the latter as expressing the same meaning as the former. Collins v. Phillips, 91 Iowa 210, 59 N.W. 40; Kalbach v. Clark,133 Iowa 215, 110 N.W. 599, 12 L.R.A. (N.S.) 801, 12 Ann. Cas. 647; Furenes v. Severtson, 102 Iowa 322, 71 N.W. 196; Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71.
[7] It is possible that the testator had some intention that, while giving the land to his son, Elmer J. Hudnutt, he desired that the son should not part with the land before the youngest child arrived at the age of twenty years, or, in case such child should not live to be twenty years of age, then not before January 1, 1940. If this be true, then apparently the testator did not understand, and the person who drafted the will did not realize, that an absolute title to the land could not be devised to the son and the land still remain subject to such a restriction. McCleary v. Ellis, 54 Iowa 311, 6 N.W. 571, 37 Am.Rep. 205; Davidson v. Auwerda, 192 Iowa 1338, 186 N.W. 406. Even if the testator did have such an intention, this does not change the fact that it was his intention that his son should become the absolute owner of the property.
[8] In our opinion, the mortgage executed by Elmer J. Hudnutt and his wife to the defendant insurance company conveyed *Page 439 
not only a particular estate for years or for life of Elmer J. Hudnutt, but it also conveyed the fee simple title to the land in question. Being the owner of the entire title, Elmer J. Hudnutt could mortgage the land to the defendant insurance company, and the trial court was not in error in sustaining the defendant insurance company's motion to dismiss the plaintiffs' petition. The decree and ruling of the trial court are, therefore, affirmed. — Affirmed.
HAMILTON, C.J., and KINTZINGER, PARSONS, and SAGER, JJ., concur.