HENRY C. ODENS, individually and as guardian, et al., Appellants, v. MINNIE VEEN et al., Appellees; DIERTJE SCHOON, Intervener, Appellee.

No. 46479.

JUNE 6, 1944.

1030

Corcoran & Kennedy, of Sibley, for appellants.

Riter & Henneberg, of Rock Rapids, for appellees.

MULRONEY, J.—The sole issue involved in this partition action is the construction and interpretation of the following clause in the will of Louie Getting, who died December 13, 1908, leaving a wife and six children:

"That is to say I hereby give and bequeath to Diertje Getting, my wife, the use and full control of my real estate consisting of the North East Quarter (NE¼) of Section Thirty (30) in Township One Hundred (100) North of Range Forty Three (43) West of the 5th P. M. as long as she remains my widow, at her death or as soon thereafter as my youngest child shall become of age the real estate above described is to be sold and the proceeds of said sale is to be equally divided between my children or their heirs share and share alike.

"If my wife Diertje Getting should choose to marry again then I order that my interest in said real estate is to be divided, and my legal share to be divided between my children or their heirs as soon as the division can be made after her marriage."

The widow married Henry B. Schoon on November 29, 1932. One of the daughters of Louie and Diertje Getting, who was named Diertje, married Henry C. Odens. She died July 6, 1930, and the plaintiffs are her heirs at law, who contend that under the above will the widow merely received a right to the use and occupancy of the realty until her remarriage, and upon the happening of that event, the children of Louie and Diertje Getting received the realty. The living children, and part of the grandchildren, as defendants, and Diertje Getting Schoon as

intervener, contended that under the terms of the will the widow was to have the use and income of the property as long as she remained unmarried, and that upon her remarriage she would then have her one-third distributive share in the property. The trial court so construed the will and the plaintiffs appeal.

The record shows that the will was drawn two days before Louie Getting died. Diertje Schoon, the intervener, testified that she talked with her husband after he executed the will and he told her that he had given her everything as long as she stayed his widow, and after that, if she married again, then she would only get one third. She testified that the banker who was the scrivener of the will told her "that was the way Mr. Getting wanted it." There were no objections to either the testimony or the competency of the witness. She was the executrix of the will and the record shows that she took the full income from the realty until her marriage to Schoon in 1932. Upon her remarriage she continued to look after the farm, retaining one third of the income and accounting to the children and grandchildren for the remaining two thirds.

This process of distribution continued until the fall of 1942, when the farm was tentatively sold and this question was raised by her son-in-law, Henry Odens. The record shows that she made distribution to Odens as guardian of his children during this period, and he did not assert any rights to the realty as an individual nor did he raise any question of Mrs. Schoon's right to retain one third of the income.

I. The plaintiffs in their written brief state that the "sole issue involved [is] the interpretation of the will." We agree that this is the only issue, and consequently other arguments found in the brief, based on a "presumption that such devise is in lieu of dower" or that her "acts and conduct and * * * long acquiescence in the testamentary provisions" constituted an election to take under the will, are not helpful. There is no doubt that under the record here she desired and intended to take under the will as construed to her by the scrivener and her husband, and as construed by her with the apparent satisfaction of all concerned until 1942. Nor do we need to comment on plaintiffs' argument that the language of the will is unambiguous and the court has therefore no jurisdiction to construe the will,

save to point out that plaintiffs alleged in their petition that there was some doubt as to the true construction of the will.

II. The sole function of the court, when the testator's intention is not clearly expressed, is to endeavor to ascertain his intention from the will and any other circumstances existing at the time the will was drawn. In re Estate of Bunting, 220 Iowa 186, 188, 261 N. W. 922, 923. Precedents are of little value. When we are groping for the testator's intent we receive but little help from decisions that give a certain meaning to particular language in another will executed under different circumstances. Judge Powers, in the Bunting case, expressed this thought by repeating the statement of Sir William Jones, " 'that no will has a brother.' "

Let us first look at the language of the will. The will was drawn by a banker, who was also a witness to the will. The initial reference to the land is "my real estate," followed by the legal description. He then, in this same paragraph, refers to "the real estate above described" in directing its disposition in the event of his wife's death. Then, in a separate paragraph, he deals with the disposition in the event his wife "should choose to marry again." Now he speaks of "my interest in said real estate" and "my legal share" which is to be divided among his children or their heirs. Clearly, he was not in this second paragraph thinking of the full interest in the land. It would seem that the testator, or possibly the scrivener, was familiar in a general way with the surviving wife's statutory right to one third and it seemed to them that the use of the words "my interest" and "my legal share" would leave the wife's statutory share, or one third, for her, and merely divide up the other two thirds among the children. If he wanted to cut the wife off without any further interest in the realty if she remarried, why did he not, as in the first paragraph, merely refer to his realty? Notice, too, that in the first paragraph he defers the sale of his realty until the youngest child becomes of age if the wife dies before that time. The provision for the division of his "interest" and his "legal share" upon her remarriage contains no such condition. Obviously, she could have remarried before her youngest child became of age, for her youngest child was then three years old.

The question of what the testator had in mind when using this language when he executed the will is our inquiry here. If he felt that his wife's one-third interest would be preserved to her in case of remarriage, and, so believing, made disposition of his property that divided up the other two thirds, then the will should be so construed.

Now let us examine the facts and circumstances surrounding the execution of the will. First we have the statement of the scrivener, who explained to the surviving widow that Mr. Getting wanted her to have the use of the property until her remarriage, when she was to receive her one third. Then we have the statement of the deceased, made to his wife after he made the will, that she was to have the property as long as she remained unmarried and one third in the event she married again. Since this is a trial de novo, and this evidence was not objected to, we will give it consideration on this appeal. Grafton v. Moorman, 88 Iowa 736, 55 N. W. 308; Coleman v. Coleman, 153 Iowa 543, 133 N. W. 755. Such evidence was certainly relevant on the issue here involved, and though perhaps it might have been excluded under the rules of evidence (a matter upon which we do not pass), it will have the same effect as though it were admissible and proper evidence in the absence of any objection to its admissibility. 20 Am. Jur. 1036, section 1185. To hold otherwise would be giving the nonobjecting party not only the advantage of the exclusionary objection as if made but also what would amount to indirect persuasion to his adversary to forego his rights to find, offer, and introduce, if available, other admissible testimony upon the subject in question. Moreover, the record here discloses the wife's conversation with the deceased was gone into upon her cross-examination.

Once we admit the will is ambiguous, we may turn to extrinsic evidence for aid in arriving at the intention of the testator by showing in what sense he employed the language of the will. From the foregoing evidence it is rather clear that by the terms "my interest" and "my legal share" he meant the two-thirds interest remaining after the statutory one-third interest of the wife. Apparently he wanted his wife to have the life use of the property until her remarriage, and in the event of remarriage, a one-third interest. The able and learned trial

1034

judge so construed the will and we feel he was right. We are somewhat fortified in our conclusion by the evidence that this was, and still is, the practical construction placed on the will by so many parties adversely affected by the construction. In re Estate of Whitman, 221 Iowa 1114, 266 N. W. 28; Guilford v. Gardner, 180 Iowa 1212, 162 N. W. 261. The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.