IN RE ESTATE OF SUSAN EASON.

OSCAR EASON, Executor, Appellant, v. MARLYS JACKSON ERICK-
SON et al., Appellees.

No. 46955.

FEBRUARY 11, 1947.

C. B. Hoeven, of Alton, and T. E. Klay, of Orange City,
for appellant.

Van Oosterhout & TePaske, of Orange City, and T. R. John-
son, of Sioux Falls, South Dakota, for appellees.

SMITH, J.—The will of Susan Eason, who died May 21, 1943,
was as follows:

"Alton, Iowa
September 10, 1940
To Whom It May Concern
Mrs Susan Eason wife of the Late Stephen Eason Leaves

this last Will and Testment being the Mother of the Faweling Children Mary being Desesed whoes Children are Marllys Floyd Oral Stephen and James Jackson these Children are to recieve Each one Hundred and Fifty Dollars as thier share as Clarance and Mary have had a considerble amount on nots these nots have not been Redemed. The Fauling Children are to recieve one Thousand Dollars Each Oscar Ernest Hilda Emilia Alvin Zella and Fred 7 of them, because George and John have had that amount in time Past Debts betwen the Children shall be paid From thier Respective share before they recieve Eny of thier inheritance these Debts must be proven with Nots or Checks From Eny Date My Privet Posesion shall be given to the Highest Bider among my Children. I hope this may be satisfactery to all and Eney one who in Eny way Contests this Will Forfits Eney Right to Eney of my Estate. Oscar shall serve as my Exeuter with out Bond.

[Signed]  Mrs. Susan Eason.
John J. Schmidt
Theresa M. Schmidt."

The will was admitted to probate June 22, 1943. Decedent's property consisted of real estate valued by the executor at $29,800, and bonds, household goods, cash, and bank account $1,483.26. No debts are shown. She left surviving her nine children and five grandchildren, children of a deceased daughter, all referred to in the will. Her husband, Stephen Eason, predeceased her in 1935.

It will be seen the will gave to each of the five grandchildren $150 and to seven of the nine living children (omitting George and John) $1,000 each, making a total of $7,750 in cash bequests. The principal controversy here concerns the disposition to be made of the estate remaining after payment of the cash bequests. The executor (appellant) contends the grandchildren are excluded from participating in the residuary estate. Four of the grandchildren object, claiming it should go to all heirs according to the laws of descent.

An alternative contention is made by the executor. Two notes came into his hands, payable to "S. Eason," aggregating $6,339, and signed by decedent's deceased daughter (mother of

the objectors) and by her husband. The executor argues that if it be held appellees are entitled to share in the residuary estate the amount of those notes should be offset against their residuary shares.

The trial court adjudged that as there was no residuary clause the remainder of the net estate after payment of the cash bequests should go as intestate property according to the laws of descent and that the executor had no right of retainer and offset as against the shares of the grandchildren on account of the alleged indebtedness of their mother to the estate.

I. The executor on appeal urges several propositions in support of his principal contention: The intention of the testator governs and "when ascertained, will be enforced by the courts without regard to abstract, arbitrary or technical rules of construction"; all relevant circumstances are to be considered in connection with the language of the will itself; and there is a presumption against intestacy.

Many cases are cited in support of these propositions but we shall not discuss them as the principles are well settled. The difficulty confronting appellant is in their application here. We do not find in this record any circumstances outside the will itself that tend to reveal any intention with regard to the residuary estate. Appellant in argument points out nothing we deem significant in the testatrix' situation or surroundings when the will was executed.

It is clear the instrument was drawn by one (probably testatrix herself) unskilled in the use of language. Appellant says:

"It will be noted that she had no personal property at the time of the execution of the will and that she was considering only the division of her real estate."

We find no significance in the fact itself, even if established. If there was no personal estate or if it was insufficient to pay the cash bequests testatrix must have contemplated that the real estate would have to be sold and the bequests paid in whole or in part from the proceeds. There would in any case be a residuary estate.

She had nine children living and five grandchildren, chil-

dren of her deceased daughter. In arranging the cash bequests she discriminated by giving each grandchild only $150 (instead of $200) and by giving nothing to her sons, George and John, while bequeathing each of her remaining seven children $1,000.

She gives reasons for this discrimination. In the case of the grandchildren she explains they are to receive the bequests "* * * as thier share as Clarance and Mary [their parents] have had a considerble amount on nots these nots have not been Redemed." And as to George and John, she says they "have had that amount in time Past."

Appellant assumes that all the children share in the residuary estate. He bases his contention as to the grandchildren upon the words "as their share" and the further statement that their parents have had a considerable amount on notes that have not been redeemed.

We cannot read into this language (in the absence of a residuary clause) an intention to disinherit the grandchildren or an intention to dispose of the entire estate by will. The words, "as their share," must be construed to mean "as their share under this will" and not as their share of the undevised property. The testatrix was manifestly *not* disposing of her entire estate. What is not expressly bequeathed or devised can only pass by inheritance. Testatrix did not give the rest of her estate to her living children. Whatever they receive more than $1,000 each will be received by them *as heirs*. The argument of appellant would mean that one can by will disinherit his heir without disposing of his property otherwise. We agree with appellees that "a negative exclusion is not equivalent to an affirmative gift."

In Fletcher v. Fletcher, 200 Iowa 135, 137, 204 N. W. 410, 411, this court quoted with approval from 3 Woerner on American Law of Administration, 1384, section 418:

" 'The devolution of title to the property of a person dying, cast by the statute of descent and distribution upon his heir or next of kin, makes it indispensable, if a testator wish to disinherit him, not only to express his intention to that effect, *but to vest the title, by plain words of gift, or necessary implication, in some other person.' "  (Italics supplied.)

A case analogous to the instant case, but in which the language of the will is stronger than here, is In re Will of Davies, 192 Iowa 723, 725, 185 N. W. 578, 579. In it the testator, in his original will, gave his daughter one fifth of the residue of his estate. In a codicil he changed this provision, saying:

"* * * instead of giving to the said Elvira Ann Davies the one fifth of my said estate I give and will to my said daughter * * * the sum of two hundred dollars *and no more of my said estate.*" (Italics supplied.)

Again, in a subsequent paragraph, he repeated:

"This sum to be *in full* of the allowance to my said daughter * * * And I ask that said will be construed * * * as giving to * * * her the sum of two hundred dollars out of my estate *and no more.*" (Italics supplied.)

This language is surely much stronger than the words "as their share" relied on by appellant here, but we held the original one fifth bequeathed her (less the $200 bequest substituted for it) became and passed as intestate property, and assumed without question that she as heir would receive her share of it.

It is true here that the notes of the deceased daughter and her husband aggregate $6,339 exclusive of accumulated interest. The discrimination in cash bequests between the grandchildren and decedent's own children is, of course, entirely inadequate to adjust that amount. But we cannot make that adjustment. Testatrix might well have taken into account the size of the unpaid Jackson notes and have provided for offset of the amount against the grandchildren's share or for her residuary estate to go only to her living children. But she did not do this and we cannot do it for her. We have no way to know her wishes except by taking her will as we find it. She may have thought the notes would still be paid by Clarence Jackson, who was still living. She may have been unwilling to penalize her grandchildren further for the sins or misfortunes of their parents. She may even have had the mistaken notion that as a matter of law the children were liable for their parents' debt

and that the right of retainer and offset would exist in favor of the estate.

In any case, we cannot write into the will something omitted by testatrix. We cannot reform under pretense of interpreting. In Starr v. Newman, 225 Iowa 901, 904, 281 N. W. 830, 832. we said:

"The intention of the testator must prevail * * * but such intention must be ascertained from the terms of the will, and from nothing else." (Citing cases.)

And in In re Will of Hagan, 234 Iowa 1001, 1007, 14 N. W. 2d 638, 641, 152 A. L. R. 1296:

"It is a familiar statement that in ascertaining the testator's intent the question is, what is meant by what the testator said, rather than what he intended to say."

We are asked here to interpret the language of the will so as to disinherit the grandchildren. This result cannot be reached by mere conjecture but only by express words in the will or by necessary implication arising from those used. 69 C. J. 97 et seq., section 1149; Harvey v. Clayton, 206 Iowa 187, 191–193, 220 N. W. 25, 27; Anderson v. Wilson, 155 Iowa 415, 136 N. W. 134.

In Harvey v. Clayton, supra, we quoted with italicized approval from 28 R. C. L. 227 et seq:

"Furthermore, it should be observed that the rule that a testator is presumed to have intended not to die intestate as to any part of his estate is not of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication."

Practically the same language is found in Anderson v. Wilson, supra:

"Finally, if we are to indulge in any presumption at all in interpreting the will, it should be done with due regard to that well-established rule that an heir at law shall not be disinherited on the strength of a doubtful construction of a will. The authorities go even farther than this, and say that an heir is not to be disinherited, except by express declaration or devise,

or by necessary implication from the testator's language." (155 Iowa at page 429, 136 N. W. at page 139, citing Jarman on Wills and other authorities.)

Testatrix' language in the instant case does not compel the construction contended for by appellant. The trial court correctly so held.

 II. Appellant's alternative contention that the debt of their parents to the estate should be set off against the grandchildren's shares as heirs and legatees finds no support in any cited authority and is not maintainable in principle. These grandchildren are not indebted to the estate. They share in the residuary estate as heirs of testatrix and not as heirs of their mother, who predeceased testatrix. Our decision in the comparatively recent case of In re Estate of Fairchild, 231 Iowa 1070, 3 N. W. 2d 157, furnishes a complete answer to appellant's argument at this point. We need not repeat what is there said or again cite the authorities therein referred to.

Appellant, citing 69 C. J. 1033, Wills, section 2234, urges that the language of the will, referring to the notes of "Clarance and Mary" not having been "Redeemed," indicates an intention that the amount of the notes should be treated as advancements and deducted from the grandchildren's inheritance. The language cannot be so construed. Nor is appellant's apparent reliance upon In re Estate of Mikkelsen, 202 Iowa 842, 211 N. W. 254, warranted by the decision in that case. We were there considering a devise to a devisee who predeceased the testator. The so-called anti-lapse statute (section 633.16, Code, 1946, section 11861, Code, 1924) was held not to prevent offset of the devisee's indebtedness to the estate against the devise passing (under the statute) to the devisee's heirs. Of course, the case is not in point here as appellees take direct from the decedent as legatees and heirs and not through their mother, who was not a devisee or legatee under the will and who never became an heir of testatrix.

What we have said has assumed that the notes payable to "S. Eason" were in fact the property of Susan Eason at her death. There is some suggestion in argument that they may have been given to *Stephen* Eason, testatrix' husband who predeceased

her. We need not determine that question. Nor need we consider appellees' argument that, being a proceeding in probate, the case is not triable here de novo. The decision of the trial court is right and is affirmed.—Affirmed.

All JUSTICES concur.