# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 20, 2002 Session

## EDWARD HUTCHINSON, JAMES HUTCHINSON, AND LEIGH HUTCHINSON
## V.
## NANCY H. NEUMAN AND JAMES L. DAY, JR.

### Appeal from the Chancery Court for Fayette County
### No. 12284     Dewey C. Whitenton, Chancellor

### No. W2001-02886-COA-R3-CV - Filed May 27, 2003

This is a will construction case. The husband devised a life estate in land to his wife, and at her death, to his devisees. The husband devised other land in fee simple to his wife, and gave her the rest and residue of his estate. The husband died in 1954 and the wife died in 1998. The remaindermen under the husband's will argued that certain real property was included in the wife's life estate and, thus, at her death, devolved to them. The beneficiaries of the wife's will argued that the real property in question was not included in the life estate or mentioned in the husband's will, and thus the land went to the wife in fee simple by operation of the residue clause in the husband's will and should now devolve to them. The trial court found that the husband intended to include the land in question in the life estate to the wife. Therefore, the land devolved to the husband's devisees. The beneficiaries of the wife's estate appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

J. Payson Matthews, Somerville, Tennessee, and Arthur E. Neuman, Washington, DC, for appellants, Nancy H. Neuman and James L. Day, Jr.

Thomas M. Minor, Somerville, Tennessee, for appellees Edward Hutchinson, James Hutchinson, and Leigh Hutchinson.

### OPINION

In 1926, Bailey K. Morrison ("Decedent") purchased from J. T. Green approximately 138 acres of land ("J. T. Green tract"), situated in Fayette County, Tennessee. In 1945, the Decedent

entered into a land-exchange agreement with George Green, and through this came to own approximately 25 acres of land ("George Green tract"). The J. T. Green tract was adjacent to and immediately south of the George Green tract. The tracts were part of a larger parcel of land of over 2,323 acres owned by the Decedent. In 1952, the Decedent executed a will that devised a life estate to his wife, Allien Day Morrison Nunn ("Wife"), in a number of parcels of the total 2,323 acres of land. Under the Decedent's will, at Wife's death, the remainder would devolve to the Decedent's sister and his nieces. One parcel included in the Wife's life estate was "the Buck Green Farm composed of approximately 125 acres." The Decedent's will contained other devises and bequests to Wife and to others. The residue of the Decedent's estate was devised and bequeathed to Wife. The Decedent died in 1954. Wife died over forty years later, in 1998.

Thus, at the time of Wife's death in 1998, the Decedent's devisees, Edward Hutchinson, James Hutchinson and Leigh Hutchinson ("Plaintiffs"), became the owners in fee simple of the real property in which Wife was granted a life estate. All real property devised by the Decedent to Wife in fee simple, or that passed to Wife through the residual clause in the Decedent's will, were owned outright by Wife at her death. This real property would pass pursuant to Wife's will to the beneficiaries under her will, Nancy H. Neuman and James L. Day, Jr. ("Defendants").

In 1999, the Plaintiff-Appellees filed a lawsuit against the Defendant-Appellants alleging, inter alia, that the parties were unable to specifically designate ownership of every parcel of land within the 2,323 acre tract owned by the Decedent at the time of his death. The lawsuit originally sought injunctive relief to require the Defendants to lease their land.[1] Pursuant to the complaint, a survey of the overall tract was conducted. The survey combined the J. T. Green tract and the George Green tract and called it the "Buck Green Farm." The Defendants then supplemented their answer to the complaint, asserting that the surveyors erred in combining the two tracts. They argued that the 25 acre George Green tract was not part of the life estate in the "Buck Green Farm" granted to Wife. The Defendants asked the trial court to determine ownership of the 25 acre George Green tract.

A hearing was held on August 4, 2000. The primary issue to be tried was construction of the clause in the Decedent's will devising a life estate to Wife in the "Buck Green farm composed of 125 acres." It was undisputed that there was not a single parcel of land of 125 acres, and it was unclear who "Buck Green" was.

The Plaintiffs called as a witness Keith Morris ("Morris"), a licensed real estate broker who had worked for the Plaintiffs as an agent and a manager of their property. Morris was familiar with the Plaintiffs' property. He noted that the Decedent, in his will, estimated the acreage of a number of parcels of land. Morris compared the Decedent's estimated acreage of seven of the parcels to the

---

[1] The original complaint averred that the Defendants were unwilling to consent to leasing their portion of the 2,323 acres for farming purposes. Because rightful ownership of each parcel had not been determined, Plaintiffs asserted that Defendants' refusal to lease their land prevented Plaintiffs from leasing their land. Therefore, Plaintiffs sought an injunction ordering Defendants to lease all of their land suitable for farming. The Defendants denied that they were not willing to lease the land for farming.

actual acreage of each parcel, and found that the Decedent's estimates were approximately 15% to 18% more or less than the actual acreage.[2] Morris noted that at least three of the parcels in which Wife was devised a life estate were composed of more than one tract and one deed, and observed that when the 138 acre J. T. Green tract was combined with the George Green tract, the total acreage was 161.43. Morris had researched deeds and did not find a "Buck Green" on any deed. Morris did not know a J. T. Green, a George Green, or a Buck Green. At the hearing, the Plaintiffs also introduced into evidence a 1945 survey color-coded to show the J. T. Green and the George Green tracts combined.

The Defendants called Herbert Walls ("Walls") to testify. At the time of the hearing, Walls was seventy-one years old, and had been a neighbor of the Decedent and his Wife for a number of years. Walls said that he knew George Green, had heard of a Buck Green but did not know him, and had never known a J. T. Green. Walls testified that the J. T. Green property was also known as the Buck Green place. He indicated that, after the Decedent acquired the George Green tract in 1945, he began farming the J. T. Green tract and the George Green tract together as if they were one tract.

The Defendants also called William E. Dowdy ("Dowdy"), aged sixty-seven, who worked for Wife on the farm from 1957 until 1970. Dowdy knew George Green and had never referred to him as Buck Green, although he had heard the name Buck Green. Dowdy had no knowledge of anyone named J. T. Green. Contrary to Walls's testimony, Dowdy said that the George Green tract was not being farmed at the time Dowdy began working for the Wife in the late 1950s, but rather that it was pasture.

The trial court ruled orally that the preponderance of the evidence indicated that it was the Decedent's intent that Wife be devised a life estate in the 25 acre George Green tract as part of the Buck Green Farm, and that the Decedent did not intend for the 25 acre George Green tract to pass to Wife as part of the residuary estate. Hence, the trial court held that the 25 acre George Green tract, as well as the 138 acre J. T. Green tract, should pass to the Plaintiffs, the remaindermen under the Decedent's will.

The trial, however, did not end at that point. Approximately one month after the trial court's ruling, the Wife's relatives discovered a schedule of property that was appended to the Decedent's

---

[2]Decedent devised to Wife the following properties with estimated and actual acreage:

| Property | Decedent's Estimated Acreage | Actual Acreage |
|---|---|---|
| Lipsky Farm | 290 | 272.32 |
| Melton Farm | 150 | 103.2 |
| Mayo Farm | 500 | 558.45 |
| Lamar Clay Farm | 350 | 385.5 |
| Stewart Farm | 500 | 450 |
| Heathcock Farm | 150 | 127 |
| J.E. Cowan Farm | 12 | 11.5 |

estate tax return, filed after his death. The schedule reflected an explanation by the executor of the Decedent's estate as to which parcels of land Wife was devised a life estate and which she took in fee. The Defendants moved to alter or amend judgment or for a new trial based on the newly discovered evidence. The trial court granted the motion for new trial, setting aside the original ruling.

After a hearing, the trial judge ruled that the document was inadmissible hearsay. The trial judge said that even if the document were not inadmissible hearsay, it would not alter his previous ruling, since the document was prepared after the Decedent's death by the executor of his estate and did not indicate the Decedent's intent. Thus, the trial court ruled once again that the property would go to the Plaintiffs, the Decedent's devisees. From this order, the Defendants now appeal.

On appeal, the Defendants argue that the trial court erred in determining that the Decedent intended to include the George Green Farm within the devise of the Buck Green Farm. The Defendants also argue that the trial court erred in ruling that the newly discovered evidence was inadmissible hearsay.

Since this case was heard by the trial court sitting without a jury, the trial court's findings of fact are reviewed on the record with a presumption of correctness, unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted).

The Defendants first assert that it was not the Decedent's intent that the 25 acre George Green tract be included in the devise to Wife of a life estate in the "Buck Green Farm composed of approximately 125 acres." The Defendants assert that the will is not ambiguous, and that the Buck Green Farm included in the Decedent's will refers only to the 138 acre J. T. Green tract. In the alternative, the Defendants contend that even if there is an ambiguity in the will, the language of the will is still clear enough to determine the Decedent's intent without resorting to extrinsic evidence or rules of construction. The Defendants argue that there is no proof in the record that the Decedent intended to include the George Green tract in the devise of the Buck Green Farm. They note that none of the witnesses associated George Green with Buck Green, and therefore, the reference to the Buck Green Farm obviously refers to the J. T. Green tract alone.

In arguing that the decision of the trial court should be affirmed, the Plaintiffs rely on the color-coded survey showing the two tracts combined; the fact that other individual properties devised to Wife were comprised of more than one deed; and the fact that after the Decedent acquired the George Green tract, he began to farm the J. T. Green tract and the George Green tract together. To

support the assertion that the tracts passed to Wife together because they were farmed together, Plaintiffs cite an Iowa Supreme Court Case, *Green v. Gisler*, 48 N.W.2d 866 (Iowa 1951).[3]

The purpose of a will construction suit is to ascertain and give effect to the intent of the testator. *Russell v. Russell*, No. M2001-00926-COA-R3-CV, 2002 Tenn. App. LEXIS 584, at \*6 (Tenn. Ct. App. Aug. 9, 2002) (citations omitted); *see also Stickley v. Carmichael*, 850 S.W.2d 127, 130 (Tenn. 1992). It is a general rule of will construction that the testator's intent is to be determined by referring to the will itself without looking outside the four corners of the document. *Jacobsen v. Flathe*, No. 01A01-9511-CH-00510, 1997 Tenn. App. LEXIS 635, at \*6 (Tenn. Ct. App. Sept. 17, 1997). When a latent ambiguity exists, however, extrinsic evidence may be considered. *Stickley v. Thomas*, 850 S.W.2d at 132, *Russell v. Russell*, 2002 Tenn. App. LEXIS 584, at \*21. A latent ambiguity arises

> from an ambiguous state of external circumstances to which the words of the will refer. It generally involves a question of identifying a person or subject mentioned in the will. It stems from an uncertain reference in the document to things outside the will susceptible of explanation only by the development of facts elucidating what the testator was talking about.

*Jacobsen v. Flathe*, 1997 Tenn. App. LEXIS 635, at \*7 n.2. (citations omitted).[4] Will construction is generally a question of law. *Russell v. Russell*, 2002 Tenn. App. LEXIS 584, at \*26. When

---

[3]In *Green*, a portion of the testator's property was devised to his brother, a portion to his sister, and a portion was not specifically devised. The Supreme Court of Iowa affirmed the trial court's ruling. The trial court had held that one of the parcels not specifically devised to any devisee was properly granted to the sister because the land in question was farmed with land that had been specifically granted to the sister in the will. *Green v. Gisler*, 48 N.W.2d at 869. The *Green* court cited to American Jurisprudence in making its decision:

> One of the commonest problems arising in connection with devises of the kind in question is whether distinct parcels of land owned by the testator are to be included in the property passing. The cases in general support the conclusion that if such parcels were used by the testator [for farming purposes, or, at least] for purposes incidental to the operation of a farm or plantation, or if the testator in his lifetime customarily regarded such parcels as a single unit, they will, in the absence of any contrary intention, be regarded as passing [even though non-contiguous].

*Id.* at 868 (quoting 80 Am. Jur. Wills § 1245).

[4]This Court has also stated that a latent ambiguity is found where:

> the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of.

*Russell v. Russell*, 2002 Tenn. App. LEXIS 584, at \*21-22 (citing *Weatherhead v. Sewell*, 28 Tenn. (9 Humph.) 272, 295 (Tenn. 1848)). Conversely, a patent ambiguity "stems from uncertainty in the language of the will itself and is apparent on the face of the will. It involves an ambiguous term that cannot be clarified by considering extraneous facts." *Jacobsen v. Flathe*, 1997 Tenn. App. LEXIS 635, at \*7 (citations omitted).

extrinsic evidence is admitted, however, questions of fact enter into the equation. ***See id.*** at \*26-27.Thus, the trial court must make witness credibility determinations. "[T]rial judges, unlike appellate judges, have an opportunity to observe the manner and demeanor of the witness while they are testifying," and therefore, are better situated to evaluate the witnesses. ***Mitchell v. Archibald***, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) (citing ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)). Hence, determinations of credibility are afforded great deference on appeal. ***Id.*** (citations omitted).

In the case at bar, Decedent devised "the Buck Green Farm composed of approximately 125 acres" to Wife for life. Decedent did not own any property transferred from Buck Green, although he owned properties transferred from J.T Green and from George Green. Thus, a latent ambiguity clearly existed, and the trial court properly admitted extrinsic evidence in order to determine the Decedent's intent.

At the trial, there was no testimony indicating that "Buck" Green was either J. T. Green or George Green. There was a 1945 survey color-coding the J. T. Green and George Green tracts together, and some testimony indicating that the two tracts were farmed together. Considering all of the evidence, and giving appropriate deference to the trial court's determinations of credibility, we cannot say that the evidence preponderates against the trial court's holding that the Decedent intended to devise to Wife a life estate in both the J. T. Green tract and the George Green tract, and that the property would therefore pass to the Plaintiffs.

The Defendants also argue that the trial court erred in excluding the newly discovered evidence. We agree with the trial court that, even if the document were not inadmissible hearsay, it reflects the understanding of the executor and not the intent of the Decedent, and therefore would not affect the outcome of this case.

The decision of the trial court is affirmed. Costs are taxed to the appellants, Nancy H. Neuman and James L. Day, Jr., and their surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE